The State v. Gurnee.

--------

THE STATE OF KANSAS v. SYLVESTER O. Y. GURNEE.

1. ACCESSARIES; *None in Misdemeanors.* In misdemeanors there are no
accessaries, but all persons concerned therein, if guilty at all, are
principals.

2. EVIDENCE; *Declarations, when Res Gestæ.* Declarations made by a
person in possession of land, as to the extent of his possession, are
admissible as part of the *res gestæ.*

3. ————— *Copy of Paper; Secondary Evidence, in Criminal Trials.*
Where a paper is made out in duplicate, and it is shown that one
of the originals is lost, and the other is in the rightful possession of
a person on trial for an offense, there is sufficient foundation laid for
the introduction of a copy of the paper, as there is no power in the
court to compel the accused to produce the paper as evidence against
himself.

4. ————— *Competency of Testimony.* It is not error to refuse to admit
testimony tending to show that a witness had notice of a contract

when no such contract is shown to have had an existence, and where, as in this case, the witness to whom the knowledge is sought to be brought home is not the party to be affected by the testimony.

5. ———— Competent evidence tending to prove any material fact in a case is admissible, although it may not be conclusive or competent to prove another fact in issue.

6. INSTRUCTIONS; *Pointing out Error.* Where a general assertion is made in the brief, that a large number of instructions given are erroneous, and no particular error is pointed out, and no single one of the instructions is indicated as erroneous, this court will not scrutinize them with great care, but will presume that if there was material error in any one of them it would be suggested.

7. MALICIOUS TRESPASS *to Growing Crops; Title to Land not Material.* On a charge of malicious trespass, in cutting and carrying off a crop of growing wheat, under ₰107 of the crimes-and-punishment act, it is not necessary to aver or prove that the owner of the wheat was the owner in fee of the land on which the wheat was growing.

8. AWARDS, *should be Signed by Arbitrators.* If an award in writing is not signed by the arbitrators, it is not binding on the parties; but if they accept the award, and arrange their possession of land in accordance therewith, it is not error for the court to refuse an instruction as to the insufficiency of the award, which instruction contains no limitations of the rule arising from the acceptance of the award.

*Appeal from Johnson District Court.*

GURNEE was charged on the oath of George H. Newton before a justice of the peace, with maliciously and unlawfully entering upon the land, or "claim," on the Black-Bob Reservation, alleged to be owned by said Newton, on the 16th of June 1874, and then and there cutting down and carrying away about fifteen acres of wheat growing on said "claim." Gurnee was convicted before the justice, and appealed therefrom to the district court. Trial was had in district court at the August Term 1874. The record discloses the following facts: In 1868 one C. J. Cleveland settled on a quarter-section of land on Black-Bob Reservation. He had a log-cabin and some ground under fence and in cultivation. In 1870 at his request his son-in-law, defendant *Gurnee,* came out to take the "claim," and Cleveland gave it up and put Gurnee in possession. Gurnee fenced it and

built a house on the north eighty acres, and moved . the Cleveland log-cabin near his new house, and used it for a stable. Cleveland made his home then with Gurnee. In May 1871 Cleveland became dissatisfied, and went to Newton's, (complaining witness.) In same month Cleveland and Gurnee agreed in writing to arbitrate matters between them. The following is the submission signed by them, to-wit:

"OXFORD, JOHNSON Co., MAY 13, 1871.

"We, the undersigned, mutually agree to abide by and conform to the decision of the men we have chosen, and to whom we refer the matter of difference existing between us in reference to the claim known as the N.E.¼ of Sec. 4, T. 14, Range 25, in Johnson county, Kansas, on what is known as the Black-Bob Reserve. We further agree that this instrument, and one exactly corresponding, or either of them, (one of which we shall each possess,) shall be evidence in court, and that the decision [of the arbitrators] shall be attached to each."

The "decision" of the abitrators chosen by said parties, was in writing, signed by the arbitrators, and "attached" to said submission. So much thereof as is material, is as follows:

"1st. Said Gurnee is to purchase said quarter-section, to-wit, the N.E.¼ of Sec. 4, in T. 14, R. 25, in Oxford township, in Johnson county, State of . Kansas, of the government. He is then to give a warranty deed to the south-half of said quarter to said Cleveland. * * *

"5th. Said Gurnee is to pay said Cleveland $25, in lawful money within five months. Said Cleveland is to have immediate possession of said 80 acres as it now is."

Cleveland went away to Missouri, and returned to Gurnee's in the spring of 1872. Gurnee continuously exercised acts of ownership over the whole quarter-section, which was inclosed in common with five other quarter-sections — no division fences. Gurnee claimed that, in February, 1872, he and Cleveland had made a verbal contract to annul and set aside the award, and Cleveland was to take, in lieu of the eighty acres designated in the award, twenty acres out of said south eighty; that he, Gurnee, was to break twelve or fifteen acres of said twenty acres, and to erect a box-house on that twenty

acres, and that he (Gurnee) was to have the residue of the quarter-section, and that Cleveland, at his death, was to deed all his interest in said twenty acres to Gurnee, and that Cleveland made such deed in May, 1874, and before the wheat was cut.    The state disputed this claim of defendant, and evidence was offered tending to show that Cleveland at all times claimed the whole of said south eighty, and witnesses (over defendant's exceptions) testified to declarations made by Cleveland regarding his possession, and prior to March 1873.    In March 1873 Cleveland sued Gurnee on an account; A. G. Newton went Cleveland's security for costs, and to indemnify himself took a quitclaim deed from Cleveland to said south eighty, which deed was left with one Kellogg as an escrow. In April 1873, Cleveland (being still in possession of said south eighty,) and said A. G. Newton leased to George H. Newton, the prosecuting witness, all the ground he could break to raise crops on, on said south eighty acres, for two years.    Said George H. Newton broke fifteen or sixteen acres and sowed wheat thereon.    Gurnee notified and warned Newton that he still owned that "claim," telling him if he broke ground there he should have no pay for it, and if he sowed he should not reap or harvest there.    Gurnee also, in May 1873, commenced an action of forcible entry and detainter against Cleveland, to recover a portion of said south eighty, and was defeated.    When the wheat was about mature, Gurnee procured the necessary men and teams and cut the wheat, and hauled and stacked it near his residence on the north half of the quarter-section.    Kellogg delivered the deed to A. G. Newton on the 9th of April 1874.    Cleveland died in June 1874.    Several questions arose on the trial as to the competency and admissibility of certain evidence offered by the state.    These questions are fully stated in the opinion, *infra.*    Of thirty-two instructions asked by defendant, the following were refused:

"4th. If the jury believe from the evidence that the land on which the wheat was cut was not the land of the prosecuting witness, Geo. H. Newton, the jury must find for defendant.

"6th. If the jury believe from the evidence that the land on which the wheat was sown, together with the residue of the quarter-section, was inclosed in common with several other tracts of land at the time the prosecuting witness entered upon it and broke the ground, and sowed the wheat, and that then and on the 18th of March 1873 the defendant was residing on said quarter-section of land and claiming to be the owner thereof, and continuously exercised acts of ownership over said quarter-section (less the twenty acres claimed to have been ceded by defendant to one Cleveland), by cutting grass thereon, hauling hay from the land, clearing the land, selling the grass from a portion of the quarter-section, and cultivating other parts of the quarter-section, and erecting and maintaining fences inclosing the whole quarter-section, you are instructed, that in contemplation of law the defendant was in actual possession of said quarter-section of land; and the prosecuting witness, and those under whom he claims, were bound to take notice of the defendant's rights in and to said land, whether such rights were legal or equitable.

"14th. The defendant is not estopped in this cause from showing that said C. J. Cleveland conveyed nothing by his quitclaim deed to A. G. Newton, and that said Newton took nothing thereby.

"18th. If the jury believe from the evidence that Samuel Bright was one of the arbitrators, and that said Bright did not sign the award, then said award is invalid, and the defendant is not bound by anything therein contained.

"19th. An arbitrator cannot delegate his power to another person to sign the award for him in the absence of such arbitrator.

"20th. If the jury find from the evidence that Samuel Bright was an arbitrator between C. J. Cleveland and defendant Gurnee, and that the signature of said Bright was placed to the award by Sherman Kellogg, one of the arbitrators, in the absence of the other arbitrators, then said award is invalid, and the defendant is not bound thereby, although you may further find that Bright authorized Kellogg to sign his name to the award.

"21st. You are instructed that the rightful owner of land may enter on the possession of an intruder, or wrongdoer, in the absence of such wrongdoer, if no breach of the peace is committed in so doing.

"28th. If the jury find from the evidence that said Cleveland delivered over the said 'claim,' or quarter-section of

land, to his son-in-law, defendant Gurnee, and intended the same as a gift to said Gurnee, and that said Gurnee accepted said gift, and took possession thereof, and made lasting and valuable improvements thereon; and if they further find that said Cleveland, on the 21st of May 1874, with a view of carrying out his original desire that said Gurnee should have said 'claim' or quarter-section of land, executed and delivered to said Gurnee a deed of said land, then you are instructed that said deed, in contemplation of law, relates back to the date of the original gift or intention, and the execution of the deed in such case is no part of the contract; it is only the evidence of it.

"32d. If you find from the evidence that George H. Newton, or those under whom he claims, has no title to the land in dispute, and that defendant was a possessor of said land before said Geo. H. Newton, then you are instructed that said George H. Newton and A. G. Newton are estopped from attacking the validity of Gurnee's deed."

The jury returned a verdict of guilty, and defendant was sentenced to pay a fine of fifty dollars, and the costs of the prosecution. New trial refused, motion in arrest of judgment overruled, and defendant appeals, and brings the record to this court for review.

*Devenney & Green,* for appellant:

1. There is not a scintilla of proof that the appellant Gurnee cut the wheat, or assisted the cutting thereof; or, that he was even seen on or near the wheat ground during the cutting or hauling away. None of the witnesses swear that Gurnee was there, and one of state witnesses swears Gurnee was not there. He having no hand in the cutting or carrying away of the grain, or any part of it, then surely his conviction and sentence were in violation of the evidence and law, and his motion for a new trial ought to have been sustained.

In all crimes under the degree of felony, there are no accessaries either *before* or *after* the fact. 2 Bl. Comm., 34; 1 Hale's Pleas of Crown, 613.

2. The district court permitted the prosecuting witness to detail statements of his lessor's grantor (Cleveland,) made

prior to the delivery to the deed to A. G. Newton, and before the lease to himself, as to the extent of Cleveland's interest in the land upon which the wheat grew. This was error, and affected the substantial rights of Gurnee. (34 Iowa, 362; 8 Allen, 100.) We insist that statements of Cleveland made in his own favor were inadmissible to strengthen the claim of Cleveland or that of his grantee, or of his lessee. 1 Kas., 309; 5 Kas., 85; 8 Kas., 351; 9 Kas., 621; 5 Serg. & Rawle, 295; 27 Mo., 220; 9 Iowa, 445; 34 N. Y. 301; 42 Vt., 403; 7 Jones, (Law) 575.

3. The court admitted in evidence a copy of a written submission and award between Cleveland and Gurnee. In this there was error. There was no sufficient foundation laid for its admission. There had been no search for the original, and no effort to obtain either of the originals, they having been signed in duplicate; (2 Kas., 325; 10 Kas., 188.) The signatures to the original — either the submission or award — had not been proven to be genuine. This was essential in order for it to be admissible. The copy offered only showed that Samuel Bright's name was on the paper *copied*, and not that the original was genuine. The genuineness of the original being first established, its contents might be proved by a duly-verified copy. But if there was no true original, the copy was worthless. (14 Iowa, 236; 27 Cal., 238; 5 Cal. 239.) If the submission and award were offered to prove title, then they were not admissible for such purpose. 5 Kas., 652.

4. The court erred in not permitting the accused to prove that the prosecuting witness, and his father, at the time they acquired their supposed interest in the "claim" or land, had notice of the fact that the submission and award of May 13, 1871, had been done away with by a verbal contract between Gurnee and Cleveland in February or March, 1872, and that the "claim" belonged to Gurnee. No matter how Newton knew it, whether by common report in the neighborhood or otherwise, the evidence was competent. 12 Mo., 196, 206; 2 Stark., 191; 1 Maule & Sel., 325; 16 La., 296.

5. The court also erred in admitting in evidence the papers

and docket entry of the justice of the peace in the case of Gurnee v. Cleveland and Eicelman. It seems that Gurnee brought suit of unlawful detainer against Cleveland and Eicelman to recover possession of certain portions of the quarter-section fenced and occupied by Gurnee, in May, 1873. After Gurnee, in that action, put in his evidence and rested, the defendants filed a demurrer to the evidence and the justice sustained it and "dismissed the action at the costs of plaintiff." The papers and docket entry were admitted and read to the jury over the objections of Gurnee. It was incompetent, irrelevant and immaterial, because the action was not between the same parties. (3 Kas., 390.) The suit was in May 1873, which was after Cleveland had conveyed to A. G. Newton, and had leased to Geo. H. Newton, the prosecuting witness (March 18, 1873,) and after the arbitration and award had been set aside and annulled (in February 1872,) by Cleveland and Gurnee, whereby Gurnee became possessed of the whole quarter-section. These proceedings were no evidence that Gurnee had no possessory rights there at the time George H. Newton entered forcibly, and sowed grain, in July or August 1873, even if the proceedings were admissible for any other reason. The right of possession in August 1873, is a very different thing from right of possession in February or March of same year. 11 Johns., 405; 7 Kas., 44; 10 Kas., 73.

6. The court erred in giving for the state the 1st, 2d, 3d, 4th, 5th, 6th, 7th, 8th, 10th, 11th, 12th, 13th, 14th, 15th, 16th, 19th, 20th instructions.

7. The court erred in refusing the defendant Gurnee the 4th, 6th, 11th, 14th instructions: 38 Ill., 418; 32 Ill., 62; 22 Cal., 595; and in refusing the 18th, 19th, 20th instructions. Those instructions are predicated upon a theory of the defense logically deducible, from at least a portion of the testimony. The award not having been signed by Samuel Bright, it is a *void* award. 10 Mich., 237; 6 Johns., 40; 11 Johns., 402; 7 Ind., 669. The arbitration between Cleveland and Gurnee is a common-law arbitration; and when there is

no express power to a *majority* to make an award, they must all join.

8. The court erred in refusing the 21st instruction asked by defendant: (23 Wis., 405; 32 Ill., 179; 10 Ben. Monroe, 72; 1 Carter, (Ind.) 65; 1 Hil. on Torts., 490 note "a",) and in refusing to give the 28th instruction asked by defendant: (31 Iowa, 332; 1 Johns. Cases, 81.) Also, in refusing the 32d instruction asked by defendant: (18 Pick., 172.)

9. We submit that it was necessary for the state to prove in this case that Newton was the owner of the land — the owner in fee: 5 Parker Crim. Rep., 230; 1 Hil. on Torts, ch. 18, §§ 12, 18; 9 Iowa, 132; 17 Pick., 236; 4 Scam., 236; 11 Ill., 23; 2 Gilm., 132; 10 Kas., 447; 31 Cal., 140. The person owning the *fee* must be named in the information or complaint, and proved as laid: 20 Iowa, 574; 1 Ind., 511; 7 Ind., 157.

The opinion of the court was delivered by

KINGMAN, C. J.: This was a prosecution for maliciously cutting down and carrying away a lot of growing wheat. It was originally tried before a justice of the peace, where a conviction was had. On appeal to the district court, it was again tried, with the same result. From that court the appellant brings the case to this court, alleging many errors, which will be noticed in their order.

I. It is said that there is no proof that appellant assisted in cutting the wheat, or in carrying it away, or that he was on the wheat-field at all; and therefore the verdict is not sustained by the evidence. It is true, that no witness testifies that appellant was on the ground; but it is in evidence that the twenty-two men and three teams that did the work were employed by appellant for that purpose, and that the wheat was hauled to his farm and stacked there. Many other facts are detailed in the evidence, going to show that if any offense was committed, it was done by the procurement of the appellant solely. If the offense were felony, these facts would have rendered him liable as accessary before the fact, if not

as principal; but in a misdemeanor, where there are no accessaries, but "all persons concerned therein, if guilty at all, are principals," he may on such evidence be found guilty as principal, if the necessary facts are established. (4 Blackstone's Com., 34; Crim. Code, § 115, Gen. Stat., 839.)

II. Two witnesses were allowed to state what one C. J. Cleveland said while in possession of the land as to the extent of his possession. Whatever diversity of opinion existed at one time on this question, it seems now well settled that declarations of this character by one in possession are admissible as part of the *res gestœ*. 1 Greenl. Ev., § 109. The authorities on this point are collated in note 81, vol. 1, p. 153 of Cow. & Hill's notes to Phillips on Evidence.

III. A copy of a submission and award was admitted in evidence. It is claimed that this copy was improperly admitted, because there had been no sufficient foundation laid by using proper means to obtain the original, and because the signatures to the original had not been proven genuine. This evidence was important. The submission was between the appellant and Cleveland. The award showed that the possession of the south-half of a certain quarter-section of land was rightfully in Cleveland, and it was on this half that the wheat was grown. The man that broke the ground, and sowed the wheat, held under Cleveland. Before offering the copy in evidence the state had shown that when the award was made it was in writing; that the submission and award had been made out in duplicate, and one given to each of the parties; that the copy was a true copy of the original given to Gurnee; that the witness did not know where the originals were; that Cleveland was dead, and had told witness that he had lost his copy, and the copy offered in evidence was taken at the instance of Cleveland. The county attorney also testified that he did not have the originals, nor had he any means of obtaining them. We think this was sufficient foundation for the introduction of the copy. One of the originals was lost, its owner dead. The other was in the possession of appellant, and there was no power in the state

to compel its production as evidence against himself. The second objection rests in a misapprehension of the facts. The witness who presented the copy testified that he was one of the arbitrators, that the award was made in writing, and that the paper offered was a true copy of *the award so made.* We think that was sufficient. The controversy as to whether one Bright signed the award or not, arose afterward. The state made a sufficient *prima facie* showing of its genuineness to authorize its admission.

IV. The fourth error is the refusal of the court to allow a witness, A. G. Newton, to testify as to whether at the time he took a deed for the land he had notice of the fact that the submission and award had been set aside, and a new contract had been entered into by which Cleveland was to have a life lease for only twenty acres of the south half-quarter-section, with a dwelling house on it, and that Gurnee was to have the rest of the quarter-section. At the time this question was asked no attempt had been made to prove that such a contract had ever been made, nor was any suggestion made that such proof would be offered. Under such circumstances the court was justified in refusing to permit an answer. This evidence was inadmissible on another ground. George H. Newton claimed to own the wheat as the lessee of Cleveland. To prove that his father, A. G. Newton, had notice of Gurnee's claim was inadmissible in this suit. It is true that A. G. Newton had told his son that when his title was perfected he would deed him the land; but this gave George H. Newton no rights, and in no way threw any light on the questions at issue.

V. It is insisted that the court erred in admitting in evidence the papers and docket entries of a justice of the peace in a case for an unlawful detainer, wherein the appellant was plaintiff and Cleveland and another were defendants. This evidence tended directly to show that at a certain time (which was subsequent to the time when it is claimed the award was set aside and a new contract made,) Cleveland, by Gurnee's admission, was in possession of the south-half of the quarter-

9—14 KAS.

section, and that Cleveland claimed that that possession was lawful. The evidence being admissible for one purpose, and nothing appearing that it was used for any other purpose, it is useless to discuss the other questions raised by appellants.

VI. The court at the instance of the counsel for the state gave certain instructions, numbered from one to twenty. Eighteen of these we are told are wrong, but no error is pointed out or suggested. It was the duty of counsel to point out errors, if any existed; and the failure to do so may be relied on as sufficient assurance that there are none. They seem correct. Some of them enunciate principles as old as the common law. Under the circumstances we do not feel called upon to pass upon them.

VII. The counsel for appellant asked thirty-two instructions; twenty-two of them were given. We have examined those refused, and think they were properly refused, and will indicate the reasons briefly. The 4th instruction was to the effect that if the land on which the wheat was cut was not the land of Newton, (the man who sowed the wheat,) the verdict must be for the defendant. The counsel for appellant insist that the person owning the fee must be named in the information, and the fact proved as laid. This point is made in the motion for arrest of judgment, but may as well be considered here as elsewhere. The information charges the land to belong to George H. Newton, and the testimony abundantly shows that he held under a lease from Cleveland, and that appellant also claims under Cleveland by a verbal contract made with him. The offense charged is one plainly under § 107 of the crimes-and-punishment act, p. 338, Gen. Stat. It is also an offense under § 1 of ch. 113, p. 1095. Under the first of these sections we do not think it necessary that it should be proven that the party injured is the owner of the land in fee. It would be as much an offense, for the landlord, who owns the fee, to enter upon his tenant's possession, and sever therefrom and carry away the growing crops, as it would be for a stranger. The language of the section does not require such a construc-

tion.   It is the injury to the "property of another," that is the offense, not injury to the land alone.   In this case the fee was not in Newton.   The appellant says that the fee was in the United States, and that is probably true.   If so, no one had any but possessory rights, except the government. This possessory right was shown to be in Newton, under Cleveland.   Unless the language requires it, we should be reluctant to hold that such possessory rights could be invaded by the strong hand, and no remedy but an action of trespass against persons who in most cases are not responsible.   The decision in the case of *The State v. McConkey*, 20 Iowa, 575, seems to be in opposition to this view; but the reasoning of that case is right, and not in conflict with this opinion.   As to ownership, the court charged that, to authorize a conviction, the state must prove beyond a reasonable doubt, that the grain cut was standing on land not belonging to defendant; that defendant had no right or interest in the grain so alleged to have been cut and carried away; a peaceable possession of the land on the part of the prosecuting witness at the time of plowing the land, and sowing the grain; a lawful right to that possession as against defendant, and a possession of the land on the part of the prosecuting witness at the time the wheat was cut.   The 6th instruction professed to state what was evidence of possession, and in the main correctly, but failed to include those qualifying facts necessary to make it applicable to the evidences, and was therefore properly refused.   The 11th instruction was refused.   It is an absurdity.   It is as follows:

"11th. That if either of two theories should be adopted by the jury from all the evidence, one of such theories consistent with the innocence of the defendant, and the other consistent with his guilt, then I charge you that you may adopt the theory which is consistent with the innocence of the defendant."

If the jury adopted a theory consistent with the innocence of defendant, they were bound to acquit; and this instruction authorized them, if from the evidence they adopted a theory of the guilt of defendant, they might acquit.   The

14th instruction could have been no guide to the jury. It was a guide for the court, and one which the record shows the court was governed by.

VIII. The 18th, 19th, and 20th instructions were in reference to the arbitration, and as abstract propositions of law are probably correct. If testimony for defendant was believed, and one of the arbitrators did not sign it, we think it was not a binding award. But the award was accepted by both parties, and acted on by both. It did not show title, except as against Gurnee, even if genuine. But, valid or void, the proof shows that both parties acted on it, and thus it became in either event evidence of the extent of the possession of the parties. As asked, the instructions would have misled the jury, because they did not contain any allusion to the effect arising from the acceptance of the award by the parties, and an arrangement of the possession of the land in accordance therewith.

The 21st instruction is not applicable to the case. The defendant had not shown himself the rightful owner of the land; and for the court to have assumed the fact, as asked in the instruction, would have been a grave error. It is not intended to say that the instruction is or is not correct law. We think the 28th is correct law, but if between the making of the verbal contract and the execution of the deed in pursuance thereof, Newton acquired his rights, then Newton would not be affected by a verbal contract of that kind of which he had no knowledge, and the instruction needed this modification to make it applicable to the case. As it was asked, it ought to have been refused. The 32d instruction is not law, and was properly refused.

The judgment is affirmed.

All the Justices concurring.