# Commonwealth *v.* Hubbard, Appellant.

*Evidence—Written instrument—Notice to produce—Secondary evidence—Criminal law—Arson—Conspiracy—Proof of corporate existence.*

On the trial of a prosecution for conspiracy to cheat and defraud

an insurance company by the burning of a building, secondary evidence of the contents of a paper needed in evidence by the Commonwealth is admissible without prior proof of notice to produce, where it appears that the original is in the possession of the defendant.

In such a case it is not error to admit in evidence testimony identifying certain tracks made by a horse around, leading to, and from the burned premises, where it appears that a blacksmith identifies the horse shoe produced in evidence, as being one on the horse hired by one of the defendants on the night of the fire; and also testimony that a "tie rope" had been found lying near the premises where the horse had been tied, where the liveryman who owned the horse testifies that he bought tie ropes of a certain description and the tie rope in evidence corresponded to the ropes he owned.

In such a case it is also proper to admit in evidence testimony connecting a son of one of the defendants indicted with his father, showing that it was through the son that the oil had been bought and placed at a point where the fire was first seen; that a few nights before, in the middle of the night, he assisted in taking property from the premises subsequently burned; that he was the only one seen in charge of the premises; and that on the evening of the fire he went a mile or so to a telegraph office where he remained until late in the morning.

It is not necessary in such a case for the Commonwealth to prove the corporate existence of the insurance companies which were defrauded, where it is shown that the policies were issued to one of the defendants who duly notified the companies of the destruction of the premises, and submitted proofs of loss.

Argued Oct. 4, 1916. Appeal, No. 230, Oct. T., 1916, by defendant, from judgment of Q. S. Potter Co., Sept. T., 1914, No. 2, on verdict of guilty in case of Commonwealth v. W. H. Hubbard, Ansel Hubbard, et al. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Indictment for conspiracy to defraud insurance companies by the burning of a hotel and barn.

At the trial the Commonwealth offered in evidence a copy of an assignment of a contract relating to the property which was burned, to W. H. Hubbard, one of the defendants. The offer was made to show title in Hubbard.

The original of the assignment was shown to be in the possession of Hubbard.   The defendants objected to the admission of a copy of the assignment.

The court ruled as follows:

By the Court: It having been testified to by the witness on the stand that the paper offered in evidence is a copy of the original contract entered into between J. K. Morley and John H. Riley relative to the purchase of the property in question and carried with it a copy of the assignment of the contract to W. H. Hubbard and the witness having testified that the original assignment was delivered to W. H. Hubbard, and the Commonwealth not being in a position to demand from W. H. Hubbard the original, we feel that the paper should be admitted in evidence as well as the assignment.   (1)

Other facts appear by the opinion of the Superior Court.

Verdict of guilty upon which judgment of sentence was passed.   Defendant appealed.

*Errors assigned* were various rulings and instructions.

*J. O. Sebring* and *Paul J. Edwards,* with them *Chester H. Ashton* and *Virgil D. Acker,* for appellants.

*C. R. Richmond,* District Attorney, with him *W. K. Swetland,* for appellee.

OPINION BY KEPHART, J., December 18, 1916:

The general rule with respect to the introduction of secondary evidence of the contents of a writing, which is in the possession of one of the parties to a suit, required, before such evidence be introduced, that notice be given demanding the production of the original.   This rule in civil causes is subject to certain exceptions.   Where the writing forms the subject-matter of the litigation, prior notice to produce is not required.   It is not exactly correct to say that the general rule applies to criminal cases

as well as civil cases, particularly as applied to the defendant who is under trial for a crime. When the writing is described in the indictment, and forms the basis of the crime, notice to produce is not necessary. Thus, it was not necessary to give notice to produce to the defendant where the indictment charged the "stealing of a bill obligatory": Commonwealth v. Messinger, 1 Binney 272. Text writers and the decisions are not in harmony when the question is whether in criminal causes notice should be given where the writing is not the immediate subject of the prosecution but is merely a link in the chain of evidence, or a part of the prosecution's plan of the case. It was intimated in Commonwealth v. Messinger, supra, that such notice was necessary. This precise question was not then before the court and the weight of authority holds that where the writing has been traced to the defendant's possession, notice to produce is not necessary. "If the indictment alleges that the accused is the custodian of a document needed in evidence, or where the evidence in the case shows it to be in his possession, or that of an accomplice who refuses to produce it on the ground of its criminating tendency, the state is not obliged to give notice to produce it": 3 Rice, Ev. p. 45. See the following well-considered cases: U. S. v. Reyburn, 6 Pet. 352, 8 L. Ed. 424; State v. Gurnee, 14 Kan. 111; U. S. v. Doebler, Baldw. 519, Fed. Cas. No. 14,977; 3 Russ. Crimes, 373; McGinnis v. State, 24 Ind. 500.

The court is without power to compel obedience to such notice and the notice would be futile. Courts should not require vain things to be done. If the notice were required, the prosecuting officer, in the presence of the jury, would have the right to demand the production of the original writing. The accused must then either produce the document, explain its nonproduction, or remain silent. In either circumstance, the result is likely to be highly prejudicial to his case before the jury. The accused, under the Constitution of Pennsylvania, need not

be required to testify against himself.   He should not be placed in a position before the jury where his action would be tantamount to giving, under compulsion, incriminating evidence against himself.   It was held in McKnight v. United States, 115 C. C. 972, that calling upon a defendant, in the presence of the jury, in the trial of a criminal case, for the production of a writing, was a violation of the immunity secured by the Constitution of the United States.

The purpose of a notice is to enable the party served to have the document in court.   It is not given to enable the party notified to explain, nullify or confirm it.   If such were the case, the reasonable length of time in which the notice was given would become quite complicated, depending on the nature of the case and the writings bearing on the case.   It has been held, in a civil case, that where a party to a suit has a writing with him in court, notice may be there given to produce it, and in the event of his refusal, the opposite party may give secondary evidence of its contents.   If the secondary evidence does not agree with the original, the defendant has the power to correct it.   It would seem, therefore, that the purpose of giving notice is fully satisfied in a criminal case when the possession of the document has been traced to the defendant where it cannot be reached by any process, and secondary evidence of its contents may be admitted.   When the Commonwealth introduces the secondary evidence, the defendant may, if he so desires, secure the introduction of the original by delivering it to the Commonwealth's officer.   Secondary evidence of the contents of a writing may be given when the absence of the original is satisfactorily accounted for, and when the original is in the possession of a defendant, in a criminal case is beyond the reach of process, its nonproduction is satisfactorily accounted for and secondary evidence of its contents may be given.   The court below did not err in admitting the copy of the assignment of the agreement to sell the real estate, on which the buildings were

located, and the record of the insurance policies through which it was intended to defraud the insurance companies.   Such evidence was not prejudicial to the other defendants: Commonwealth v. Wilcox, 56 Pa. Superior Ct. 244-254.   The first and second assignments of error are overruled.

The assignment of error relating to the admission in evidence of the testimony identifying certain tracks made by a horse around, leading to, and from the burned premises cannot be sustained.   The blacksmith identified the horse shoe in evidence as being the one on the horse hired by Wakely, one of the defendants, on the night of the fire and the testimony showing similarity between the shoe and the tracks was for the jury.   The evidence connecting Wakely with the crime becomes more convincing from the fact that when the horse was driven toward the burned premises, it passed a buggy where it was compelled to leave the middle of the road and go to the side of it.   Here these tracks were found and the evidence as to the hour that this occurred as being shortly before the fire, was also for the jury.   These tracks were also found in the rear of the hotel that was burned.   A "tie rope" was found lying behind this hotel where the horse had been tied.   The liveryman testified that he bought tie ropes of a certain color, so that they might be easily identified and the tie rope in evidence corresponded to the ropes he owned.   This evidence forms a part of the chain of evidence against Wakely. This horse, with another, was last seen or known to be in Wakely's possession.   It called upon him for an explanation which he failed to give.   His conversation with the liveryman on the morning after one of the fires with the other circumstances in the case showed an effort to cover his real movements during the night of the fire.

Without reviewing all the testimony connecting Ansel Hubbard, the son, with the crime it was through him that the oil was bought and placed at a point where the

fire was first seen.   In the middle of the night, a few nights before the fire, he assisted in loading an automobile with property from the hotel and he gave directions as to the removal of other property.   He was the only one seen in charge of the hotel.   He left it on the evening of the fire and went a mile or so to a telegraph office where he remained until late in the morning.

No objections were made to the Commonwealth's failure to prove the corporate existence of the companies against whom the conspiracies existed if such proof were necessary.   It was shown that policies of insurance were issued to Hubbard; that he duly notified the agent of the companies of the destruction of his hotel and barn by fire; that he submitted proofs of loss to these companies on account of such policies.   It was unnecessary under this state of facts to show corporate existence. They were by the. defendant's admission shown to be bodies capable of being defrauded under Section 139, Act of March 31, 1860, P. L. 146.

The charge of the court, as a whole, presents no reversible error.   The learned trial judge was careful to remind the jury that he did not attempt to exactly quote the testimony, and that the jury should not be guided by any misquotation made by him.   We do not find any harmful misstatement of the evidence, and had there been such misstatement, it would have been the duty of defendants' counsel to call it to the court's attention that it might be corrected before the jury retired.

The assignments of error are overruled, the judgment is affirmed, and the record will be remitted that the defendants may serve the unexpired term for which they were sentenced.