# Commonwealth *v.* Valeroso, Appellant.

*Criminal law—Murder—Evidence—Demand for production of letter by prisoner—Compulsory self-incrimination—Constitution of Pa., article I, section 9.*

1. In all criminal prosecutions the accused cannot be compelled to give evidence against himself.

2. He cannot be required by speech or the equivalent of speech to criminate himself.

3. On the trial of an indictment for crime the accused cannot be called, in open court, and before the jury which is trying him, to produce a letter alleged to have been written and mailed to him bearing upon the motive of the crime, in order that it may be given in evidence, to aid in establishing his guilt, or, if not produced, secondary proof of its contents may not be shown for a like purpose.

*Evidence—Letter addressed to two persons—Receipt of letter— mailing.*

4. The contents of a letter addressed to two individuals, without proof as to its receipt by the one to be affected by it, cannot be received in evidence in the trial of a cause, either civil or criminal.

5. Not decided whether the mailing of a letter, postage prepaid, is prima facie evidence, in a criminal case, that it was received by the person to whom it was addressed.

Argued January 31, 1922. Appeal, No. 274, Jan. T., 1922, by defendant, from judgment of O. & T. Luzerne Co., Sept. T., 1921, No. 320, on verdict of guilty of murder of the first degree, in case of Commonwealth v. Frank Valeroso. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Reversed.

Indictment for murder. Before FULLER, P. J.
The opinion of the Supreme Court states the facts.
Verdict of guilty of murder of the first degree, upon which sentence was passed. Defendant appealed.

*Errors assigned,* among others, were (11, 12) rulings on evidence as shown by the opinion of the Supreme Court, quoting the bill of exceptions.

*Frank P. Slattery,* with him *George J. Ritchie* and *Herman J. Goldberg,* for appellant.—It is a constant and invariable rule that in criminal cases the party shall never be obliged to furnish evidence against himself: Boyle v. Smithman, 146 Pa. 255; McKnight v. U. S., 115 Fed. 972; Boyd v. U. S., 116 U. S. 616.

Letters will not be admitted in evidence although written and mailed to the accused, without proof that the accused actually received them.

*Arthur H. James,* District Attorney, with him *William J. Goeckel,* for appellee.—Secondary evidence is admissible to show the contents of letters in the possession of defendant in a criminal proceeding when he refuses to

produce them on notice to do so and cannot be compelled to produce them: Dunbar v. U. S., 156 U. S. 185.

From an examination of the authorities and the weight of adjudication, the mailing of a letter under such circumstances as testified to in this case, is sufficient preliminary proof of the delivery of the letter to at least demand an explanation from defendant and its credibility was entirely for the jury: Jensen v. McCorkell, 154 Pa. 323; Witmore v. Ins. Co., 148 Pa. 405.

OPINION BY MR. JUSTICE SCHAFFER, March 6, 1922:

Defendant appeals from a judgment of sentence to death, resulting from a verdict against him of guilty of murder of the first degree for the felonious killing of Felix Nowak.

The circumstances of the crime were most cruel and atrocious. It is charged the accused, having shot the deceased, inflicting fatal wounds, to conceal his crime, set fire to the house in which his victim was living, and Nowak, his wife and three children were consumed in the fire.

Valeroso and Nowak, with their respective families, occupied the same house, the latter being the owner. He had contracted to sell the property to defendant, reserving certain rooms for his, Nowak's, occupancy. The consideration for the sale was to be paid in installments by Valeroso. At the time of the commission of the crime, he was in arrears in his payments, and a letter had been written to him and his wife by Nowak's attorney, threatening to evict them from the property. On the night of the tragedy, both families were in the house. All of the Valeroso family, consisting of the defendant, his wife and four children, escaped from it; none of the Nowak family was saved. It is not necessary, in disposing of the case in the way we shall, to further detail the circumstances which led to the defendant's conviction.

On the trial, to show motive, and as one of the most important pieces of evidence in the case, the Common-

wealth called on defendant, in the presence of the jury, to produce a letter written to him and his wife by William J. Goeckel, Esq., attorney for Felix Nowak, and the letter not being produced, secondary evidence was admitted of its contents. Just how important a part this letter played in the case appears in the opinion of the trial judge on the motion for a new trial, in which he says, "The general contention of the Commonwealth, based entirely on circumstantial evidence, is, that the directly impelling motive for this horrible performance was a notice [the letter referred to], just received by him [defendant] from Nowak of the latter's intention to oust him from the premises for default in payment of the purchase money, under a contract between them."

Defendant challenges the Commonwealth's position with reference to this letter in three respects: First, in calling for its production by him in open court before the jury; second, its contention, sustained by the trial court, that the receipt of the letter by him, could be inferred, from the fact that it was addressed to him and his wife, and deposited, postage paid, in a post office; and, third, the original letter not having been produced on call, the offering, under the court's ruling, of secondary evidence of its contents.

In a criminal proceeding, is it proper to call on the defendant, in open court, and before the jury which is trying him, to produce a letter alleged to have been written and mailed to him, in order that it may be given in evidence, to aid in establishing his guilt, or if not produced, that secondary proof of its contents may be shown, for a like purpose? The Constitution of Pennsylvania, article I, section 9, provides, "In all criminal prosecutions the accused......cannot be compelled to give evidence against himself." This and language of similar import in the Constitution of the United States crystallized a principle in our constitutions, state and federal, which had been established in English law, necessary to the maintenance of liberty.

This rule of law was somewhat slow of development as compared with the ripening of other doctrines deemed essential to individual liberty. "The woof of its long story is woven across a tangled warp composed in part of the inventions of the early canonists, of the momentous contest between the courts of the common law and the church, and of the political and religious issues of that convulsive period in English history, the days of the dictatorial Stuarts": Wigmore on Evidence, vol. 3, page 3070. "Down to the early 1600s, at any rate, it was certainly lacking" in the common law: Ibid., page 3084. "The Petition of Right (1629) though it insists upon the right secured by Magna Carta to be condemned only by the law of the land, and sets forth by way of grievance divers violations of it, is silent upon the practice of compulsory self-incrimination, though it was then a matter of common occurrence in all the courts of the realm. The bill of rights of the first year of the reign of William and Mary (1689) is likewise silent, though the practice of questioning the prisoner at his trial had not then ceased": Twining v. United States, 211 U. S. 78. This principle, eventually firmly established, has never been departed from or infringed, since it obtained full recognition. It was brought to America by our ancestors as a part of their birthright: 16 Corpus Juris 566.

If the prisoner on trial has no other shield to protect him, he always has that of his own silence in the court room—it is inviolable by prosecuting attorney, court or jury. Would this be true, if he could be subjected to call in open court for testimony deemed by the prosecution necessary to establish guilt, when, in many instances, not to speak, in answer to the call, would be more prejudicial than to give full utterance, and where to answer at all, without complete explanation, might amount well nigh to confession of guilt? To jealously guard the rights of one accused of crime, has been one of the fundamentals of the administration of justice, in all courts where English law and customs regulate the affairs of

men; and one of the great safeguards of the accused would be broken down, if, on his trial, demand could be made on him before his triers to produce evidence intended to aid in his conviction. If letters can be called for, why not other documents and things believed to be incriminatory? If there be a missing link in the Commonwealth's case, what more damning circumstance could there be to the defendant, to whose possession it is alleged to have been traced, than his standing mute under call. Mr. Justice DAY, now of the Supreme Court of the United States, speaking for the circuit court of appeals, in McKnight v. United States, 115 Fed. R. 972, 54 C. C. A. 358, thus characterized and pointed out the dangers of such a practice: "A perusal of the decisions of the Supreme Court shows that no constitutional right has been the subject of more jealous care than that which protects one accused of crime from being compelled to give testimony against himself. The right to such protection existed in the common law, and was carried into the Constitution, that the citizen might be forever protected from inquisitorial proceedings compelling him to bear testimony against himself of acts which might subject him to punishment. In the present case the accused, in the presence of the jury, was, by direction of the court, called upon to produce the document...... The production of such a paper would have been self-incriminating to the defendant in the highest degree. ......The accused, by the demand made upon him before the jury, after proof tending to show possession of the document, was required either to produce it, deny or explain his want of possession of the writing, or by his very silence permit inferences to be drawn against him quite as prejudicial as positive testimony would be. ......We think the procedure was an infraction of the constitutional rights of the accused, within the meaning of the fifth amendment of the Constitution." When this case was again before the circuit court of appeals (McKnight v. United States, 122 Fed. R. 926), where the

notice to produce had been given, but not in the presence of the jury, the court said: "To say to a defendant in the presence of a jury, 'If you do not produce such and such a document, we will prove its contents by the best evidence within reach,' is a method of compelling a defendant to become a witness against himself, as most unjust inferences may be drawn from a refusal to comply with such a demand, and even more dangerous results from compliance." The Supreme Court of Oklahoma arrived at the same conclusion in Gillespie v. State, 5 Oklahoma Crim. 546, 115 Pac. R. 620, as did the Supreme Court of Iowa, in reversing a conviction of assault with intent to commit manslaughter, where the trial court had interrogated the accused, who had not offered themselves as witnesses, as to the possession of certain papers. Commenting on this, that court said: "Accused persons cannot be compelled to give evidence against themselves, nor can they be placed in the position of admitting or denying in the presence of the jury anything having a moral bearing on their guilt": State v. Markley, 75 Iowa 695, 39 N. W. 111. While the case of Iowa v. Height, 59 L. R. A. 437, was determined upon another constitutional provision, it contains an admirable discussion of the general question of immunity from self-crimination.

The right to compel the accused to exhibit himself for identification, which is closely related to the question we are considering, has been the subject of much discussion. In People v. Gardner, 28 L. R. A. 699, the New York Court of Appeals decided that compelling the defendant in a criminal case to stand up, for the purpose of identification, does not violate the constitutional provision against compelling one to be a witness against himself, the court in the course of its opinion saying, "The history of the constitutional provision referred to clearly demonstrates that it was not intended to reach a case like this......The main purpose of the provision was to prohibit the compulsory oral examination of the prisoners

before trial, or upon trial for the purpose of extorting unwilling confessions or declarations implicating them in crime." The note to this decision in which the American and English cases on the question are reviewed (28 L. R. A. 699), states there is a hopeless conflict of authority, on the identical point just enunciated each side of which is supported by a respectable line of apparently well considered cases. The same conflict of authority is pointed out in 8 Ruling Case Law, page 78. The result of a study of these decisions is to show that, while the courts are not at all of uniform opinion as to whether it is a violation of the constitutional privilege to compel the defendant on trial to exhibit himself for the purpose of identification or comparison, nevertheless the uniform principle, recognized in all of them, is, that he cannot be required by speech or the equivalent of speech to criminate himself. In the instant case, this principle applies, because, on the call for the letter, he was bound to speak or remain silent and silence was the equivalent of speech. "The prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material": Holt v. United States, 218 U. S. 245 (1910).

In our own case of Johnson v. Commonwealth, 115 Pa. 369, one of the most celebrated criminal trials of its day, the district attorney called upon the prisoner on trial, to stand up and repeat certain words, in the presence of the widow of the man he was charged with having murdered, for the purpose of aiding her in identification. Of this incident in the trial, we said it "may be dismissed with the remark that no objection was made or exception taken thereto in the court below. So far as the record shows, the request was promptly acceded to without any objection either by the prisoner himself or his counsel. Having thus waived the right of objection and taken the chances of a favorable result, it would be con-

trary to every rule of practice to permit him to take advantage of what was done, even if it was erroneous......
It does not appear that the silence of the record, as to any objection or exception to the action complained of, is the result of accident or mere oversight. If such had been the case, the court on application would have so corrected the record as to show what actually occurred on the trial. But, assuming for the sake of argument, that timely objection was made and exception taken, we are not prepared to say it would be of any avail to the prisoner. He was not asked, much less compelled, 'to give evidence against himself.' The sole object of the request was to afford the witness, Mrs. Sharpless, then on the stand, an opportunity of seeing the prisoner and hearing the sound of his voice, so that she might the more intelligently testify whether he was or was not the man by whom she was confronted on the night in question. To hold that this was a violation of the clause, in section 9 of the Declaration of Rights, which declares the accused 'cannot be compelled to give evidence against himself,' would in my judgment be a strained construction of that instrument. If it should be sanctioned, what would prevent a person accused of having stolen property in his possession from successfully interposing a like plea of constitutional immunity and thus thwarting any attempt to search for and recover the property? While the constitutional rights of those accused should never be violated, care must be taken not to deprive the Commonwealth of any legitimate means of detecting and punishing crime. It is not our purpose, however, to pass upon the question, intended to be raised by these specifications, until it is properly presented. If it should ever arise and be deemed worthy of serious consideration, it will then be definitely settled." While we do not pass upon the precise question in that case now, yet the question we are considering bears a close analogy to it.

The case of Dunbar v. United States, 156 U. S. 185, brought to our attention by the Commonwealth, as sustaining the position, that it was proper to call on the defendant to produce the letter, and, on his failure so to do, that proof of its contents could be made, is not controlling of the question before us. There, a witness for the prosecution was on the stand, who had been an accomplice of the defendant and turned state's evidence. He testified as to letters written by the defendant, and that letter press copies thereof were in letter books in the latter's possession. Thereupon counsel for the prosecution gave defendant and his counsel notice to produce the letter press copies of the letters written by him, and the originals of the letters written to him, to which his counsel replied there were no such letters in existence. The trial court ruled, the witness having testified that the letter books were in the possession of the defendant, and the defendant not having produced them, their contents should be shown by the witness on the stand. In affirming this ruling, it was pointed out in the opinion that "No objection was made as to the time or manner in which the notice to produce was given." No question was raised as to any violation of the defendant's constitutional privilege, and therefore the case has no bearing on the question we are called on to decide.

When the question we are dealing with came squarely before the New York Court of Appeals, it said: "The practice, however, of calling upon defendants in criminal cases to produce incriminating papers alleged to be in their possession is so frequently adopted by zealous prosecutors and is so objectionable that we take this occasion to express our disapproval thereof......To allow a demand for the production of a document to be made upon an accused person in the presence of the jury is to require him to produce it or deny his possession thereof, or by reason of his silence to warrant injurious inferences against him. For this reason the practice is properly forbidden......We approve the rule laid down in

McKnight v. United States, because it seems to us the only effective method of preventing a practice which virtually deprives the defendant in a criminal case of a right guaranteed him by the Constitution": People v. Gibson, 218 New York 70 (1916).

The propriety of calling on the defendant in a criminal case to produce a document, was given consideration by the Superior Court in Commonwealth v. Hubbard, 65 Pa. Superior Ct. 213 (1916), where the immediate question was, whether secondary proof of the contents of a paper, traced to defendant's possession, could be given without demand having been made on him to produce it. Mr. Justice KEPHART, then of the Superior Court and speaking for it, in demonstrating the proposition that it was not necessary to call on the defendant to produce a document traced to him, used this significant language, "The court is without power to compel obedience to such notice and the notice would be futile.  Courts should not require vain things to be done.  If the notice were required, the prosecuting officer, in the presence of the jury, would have the right to demand the production of the original writing.  The accused must then either produce the document, explain its nonproduction or remain silent.  In either circumstance, the result is likely to be highly prejudicial to his case before the jury.  The accused, under the Constitution of Pennsylvania, need not be required to testify against himself.  He should not be placed in a position before the jury where his action would be tantamount to giving, under compulsion, incriminating evidence against himself."

The call to produce the letter made by the Commonwealth on the defendant, in open court and before the jury, was violative of his constitutional privileges and the trial court erred in permitting it to be made.

It is not necessary to determine the broad question whether the mailing of a letter, postage prepaid, is prima facie evidence, in a criminal case, that it was received by the person to whom it was addressed, because the copy

of the letter received in evidence was inadmissible against the defendant for a reason not adverted to in the printed brief, but advanced during the argument at bar. The letter was not addressed to defendant alone, but to "Mr. and Mrs. Frank Valeroso." For anything that appeared, the wife of the defendant may have received it, not he. Certainly, the contents of a letter addressed to two individuals, without proof as to its receipt by the one to be affected by it, cannot be received in evidence in the trial of a cause, either civil or criminal.

The eleventh and twelfth assignments of error are sustained and the record is remitted to the court below to the end that a new trial may be had.