## In re Bruno

*Charles J. Margiotti*, Attorney General, *James J. Gallagher*, Special Deputy Attorney General, *L. E. Enterline*, district attorney, and *John B. McGurl*, assistant district attorney, for petitioners.

*R. A. Freiler*, contra.

HICKS, P. J., April 12, 1937.—On December 23, 1936, upon the petition of the Attorney General of the Commonwealth and the district attorney of this county, a rule was granted by this court upon Antoinette Billig, Elveda J. Bruno Czerik, and the Schuylkill Trust Company to show cause why a safe deposit box and its contents in the said trust company should not be impounded by the court, by directing the officers of the bank that the box should not be opened or the contents taken therefrom except at the court's direction after notice to petitioners.

In the petition it is alleged (1) that Joseph J. Bruno, a convict under life sentence for murder, escaped from the county prison on December 18, 1936, and the warden, deputy warden and guard, together with Antoinette Billig, a daughter of the escaped criminal, are jointly charged with crimes growing out of the escape, and Antoinette Billig individually for additional crimes; (2) that

Joseph J. Bruno has safe deposit box no. 208 in the Schuylkill Trust Company vaults; (3) that, for convenience, the box was listed in the names of Joseph J. Bruno, Antoinette Billig and Elveda J. Bruno Czerik, daughters, jointly or singly, although the daughters have no interest in the ownership or contents thereof; (4) on the day of the escape, the convict abandoned the box; (5) upon the prayer of the petitioners and by agreement of counsel for Antoinette Billig, the court directed the trust company on December 22, 1936, to permit petitioners or their duly authorized agents forthwith to open the box; (6) pursuant to the voluntary agreement of Antoinette Billig and the order of this court, the box was opened; (7) that it contains papers, documents, envelopes, list of securities and other material evidence pertaining to Bruno's escape which will be important and necessary to the Commonwealth, both in the preparation for and the trial of those responsible for the escape.

Service of the rule was made upon the trust company, Antoinette Billig and Elveda J. Bruno Czerik on December 24, 1936. On the return day, December 28, 1936, upon application of counsel for Antoinette Billig, a continuance was granted until December 31, 1936, for the filing of her answer. On this day, Antoinette Billig and Elveda J. Bruno Czerik were represented by counsel, who filed the answer of the former with the request that it also be considered as the answer of the latter. Upon the application of the Attorney General, the hearing was continued and, by order of the court, the case was placed on the February argument list.

In the answer filed, it is averred that the box is the property of the escaped convict, Antoinette Billig and Elveda J. Bruno Czerik, and that all of them have an interest and ownership in the contents; that the holders never abandoned it; that the papers, documents, envelopes, list of securities, etc., in the box are not important and necessary for the preparation and presentation of the Commonwealth's case; and finally, they challenge

the right of the court to grant the prayer of the petition as violative of their constitutional rights under the fifth amendment of the United States Constitution and article I, sec. 9, of the Constitution of Pennsylvania.

On February 15, 1937, the day of hearing argument, petitioners introduced evidence to the effect that Mrs. Billig declared in the presence of a witness that the safe deposit box was secured by her father and that she and her sister were authorized to open it for the sake of convenience because he could not open it; that she had no interest in the box and that she was taking care of things there. No evidence was introduced by respondents, so the Commonwealth's testimony stands uncontradicted. We, therefore, conclude that the safe deposit box was rented by Joseph J. Bruno for his own purposes and that it was put into the three names so that, he being confined in jail, either or both of his daughters might have ready access to it for him.

The question for decision is stated by petitioners in their written brief as follows: May a court of quarter sessions, upon the petition of the prosecuting attorneys, impound the papers and documents of an escaped murderer contained in his safe deposit box which are necessary to the Commonwealth in the preparation and trial of a criminal prosecution instituted against those alleged to have aided in his escape?

This assumes of course that papers and documents, belonging to the escaped murderer, are contained in the box and that they are necessary to the Commonwealth in the preparation and trial of those alleged to have been implicated in the escape without proof and in the face of a positive denial in the answers of respondents. From the record, we do not know what is in the box or to whom the contents belong. The petition contains nothing but a very general and indefinite description and therefrom conclusions are drawn and averred. We cannot say whether they are necessary and important in the preparation of the cases and the trial of others charged or whether they

pertain to the escape. Although the petition contains these averments, the answer traverses them, and no proof in support was offered. As we read petitioners' argument, we understand it to be based upon the conclusion, unsupported by factual basis, that the box contains writings of an escaped murderer which tend to inculpate parties charged with assisting in his escape. We cannot decide the important underlying question involved in this proceeding upon conclusions, inferences and mere representations without evidence to support them in the face of a complete denial by respondents. For this reason, we might well dismiss the petition. We do not care, however, to decide this question on technical grounds.

The question, as stated by petitioners, omits the important phase, too, that the safe deposit box and the contents thereof are in the joint custody or possession of the escaped murderer, one charged with assisting in his escape, and a third person. Only they are able to get at the box and the contents. This rule to impound the contents is directed not only against the third person but against a defendant custodian and possessor as well. We must keep this in mind as we discuss the privilege against self-incrimination under constitutional sanction.

In all criminal prosecutions, by article I, sec. 9, of the Pennsylvania Constitution and the fifth amendment of the United States Constitution, the accused cannot be compelled to give evidence against himself. In the interpretation of the principle involved nothing turns upon the variations of wording in the constitutional clauses. In history and in the constitutional definitions, the kernel of this privilege against self-incrimination is testimonial compulsion:

"The general principle, therefore, in regard to the form of the protected disclosure, may be said to be this: The privilege protects a person from any disclosure *sought by legal process against him as a witness*": 4 Wigmore on Evidence (2d ed.) 864, sec. 2263.

The privilege covers facts involving liability of the

person to a repressive penalty by the State, as contrasted with liability to a civil claim for redress or for performance: Wigmore, supra, secs. 2254, 2257. It covers any form of testimonial disclosure, i. e., a disclosure sought to be obtained from the person through some act of volition on his part, under compulsory legal process against him as a witness: sec. 2263.

"It follows that the production of *documents or chattels* by a person . . . in response to a subpœna, or to a motion to order production, or to other form of *process treating him as a witness* (*i. e.* as a person appearing before the tribunal to furnish testimony on his moral responsibility for truth-telling), may be refused under the protection of the privilege; and this is universally conceded. For though the disclosure thus sought be not oral in form, and though the documents or chattels be already in existence and not desired to be first written and created by a testimonial act or utterance of the person in response to the process, still no line can be drawn short of any process which treats him as a witness; because in virtue of it he would be at any time liable to make oath to the identity or authenticity or origin of the articles produced": Wigmore, supra, sec. 2264.

Documents or chattels obtained from the person's control without the use of process against him as a witness are not in the scope of the privilege, and may be used evidentially. This distinction has received repeated illustration and almost universal acceptance in a variety of applications to documents and chattels obtained by search or seizure independent of testimonial process, e. g., by physical search of the person or premises without calling upon the party for any act or utterance of his own: Wigmore, supra, sec. 2264. The reason for this distinction is quite obvious, because the proof of their identity, or authenticity, or other circumstances affecting them, may and must be made by the testimony of other persons, without any employment of the accused's oath or testimonial responsibility. And further, the privilege against

self-incrimination is not identical with immunity from unreasonable search: People v. Chiagles, 237 N. Y. 193, 142 N. E. 583, per Cardozo, J.

The expressed purpose of the petition is to make available for use by the Commonwealth in the preparation and trial of a criminal prosecution against Antoinette Billig, alone and jointly with others, certain documents and papers in her custody and control. The order of impounding includes necessarily her production of them when wanted by the Commonwealth. It comprehends, beyond a doubt, production under the compulsion of legal process, i. e., a court order. By her forced delivery of them, she, a defendant, would be giving testimonial value to the identity, authenticity, and origin of these writings and documents in a criminal prosecution against her. For petitioners solemnly allege under oath their pertinency and worth in not only preparing a criminal case against her but in actually trying her. And it does not change the situation that, under the circumstances, she does not have exclusive control of the box or that in some of the cases she is jointly indicted with others. Action on her part is to be compelled by the constraint of the court's order. And we think this is testimonial compulsion. She could not be compelled to produce these documents in response to a subpœna duces tecum: Haywood et al. v. United States, 268 Fed. 795, 802; and likewise cannot be compelled to hold them available for use by the Commonwealth and produce them for the preparation and trial of the case against her, by order of this court.

The constitutional provision was intended to prevent the compelling of a defendant, either before or at the trial, to say something which could be used in evidence against him: Commonwealth v. Dabbierio, 290 Pa. 174, 178. And "to say something" includes not only speech but its equivalent: Commonwealth v. Valeroso, 273 Pa. 213, 220. If she produced the documents under compulsion of the desired court order, not only implied but ex-

pressly stated to be used against her before and at the trial, by her very act she would be saying that these documents were contained in the box, jointly held by her and her escaped convict father at the time of his escape and were authentic. And it is of no importance to refer to the fact that she, previous to this proceeding, after her arrest, did permit petitioners to inspect the contents of the box. She did not give the contents to them, nor did they take them.

In the case of Boyle v. Smithman, 146 Pa. 255, an action to recover penalties under a statute, the court refused to compel defendant to produce his books in court so that they might be used as evidence against him at the trial. At page 274, the Supreme Court declared:

"This action is in form a penal action. Its object is to punish the defendant for disobeying the direction of the statute, by imposing penalties. . . . The defendant could not be compelled to testify against himself as a witness, and for the same reason he cannot be compelled to aid in his own conviction by the production of his books and papers. He had an unquestionable right to insist upon his privilege, and the court was bound to protect him in the enjoyment of it."

This case is authority for the proposition that a defendant, subject to repressive penalties or charged with crime, cannot be compelled to produce his books or records by subpœna or court order. Lord Mansfield, in Roe et al. v. Harvey, 98 Eng. Repr. 302, 4 Burr. 2484, 2489, observed:

"But in a criminal or penal cause, the defendant is never forced to produce any evidence; though he should hold it in his hands, in Court."

In the case of Logan et al. v. Pennsylvania R. R. Co., 132 Pa. 403, in a pending action for treble damages under the Act of June 4, 1883, P. L. 72, condemning undue and unreasonable discrimination by common carriers, plaintiffs prayed for an order by petition for the production on the trial of books and papers in defendant's possession,

seeking thereby to establish a liability of defendant to plaintiffs for the statutory penalty. The court denied the prayer of the petition and dismissed the rule under article I, sec. 9, of the Constitution of Pennsylvania establishing the privilege against self-incrimination in criminal and penal actions.

In the case of Commonwealth v. Valeroso, supra, the accused was tried for murder. On the trial, to show motive, and as one of the most important pieces of evidence in the case, the Commonwealth called on defendant, in the presence of the jury, to produce a letter alleged to have been written to him. The letter not being produced, secondary evidence was admitted of its contents. Not only the calling upon defendant for the letter's production but the admission of secondary proof of its contents were held by the court to have been error. The court held, at pages 216-217:

"The Constitution of Pennsylvania, article I, section 9, provides, 'In all criminal prosecutions the accused . . . cannot be compelled to give evidence against himself.' This and language of similar import in the Constitution of the United States crystallized a principle in our constitutions, state and federal, which had been established in English law, necessary to the maintenance of liberty. This rule of law was somewhat slow of development as compared with the ripening of other doctrines deemed essential to individual liberty. . . . This principle, eventually firmly established, has never been departed from or infringed, since it obtained full recognition. It was brought to America by our ancestors as a part of their birthright: 16 Corpus Juris 566."

It is plainly apparent from the averments of the petition that its purpose is to make certain that the contents of the box shall not be removed so that, if needed in the preparation of the Commonwealth's case or at the trial of defendant, the prosecuting attorneys may call upon her for the production thereof. In Commonwealth v. Valeroso, supra, at page 222, it was said:

" 'The practice, however, of calling upon defendants in criminal cases to produce incriminating papers alleged to be in their possession is so frequently adopted by zealous prosecutors and is so objectionable that we take this occasion to express our disapproval thereof. . . . To allow a demand for the production of a document to be made upon an accused person in the presence of the jury is to require him to produce it or deny his possession thereof, or by reason of his silence to warrant injurious inferences against him. For this reason the practice is properly forbidden. . . . We approve the rule laid down in McKnight v. United States, because it seems to us the only effective method of preventing a practice which virtually deprives the defendant in a criminal case of a right guaranteed him by the Constitution': People v. Gibson, 218 New York 70 (1916)."

Commonwealth v. Hubbard, 65 Pa. Superior Ct. 213, was a case of prosecution for conspiracy to cheat and defraud an insurance company by the burning of a building. A writing, the original of which was in the possession of defendant, and secondary evidence thereof in possession of the Commonwealth, was an essential piece of evidence. The introduction of secondary evidence of the contents of the writing without notice to defendant, demanding the production of the original, was one of the major question on appeal. On page 217, Kephart, J., held, after reviewing the authorities:

"It would seem, therefore, that the purpose of giving notice is fully satisfied in a criminal case when the possession of the document has been traced to the defendant *where it cannot be reached by any process*, and secondary evidence of its contents may be admitted." (Italics supplied.)

On pages 216 and 217, it appears:

" 'If the indictment alleges that the accused is the custodian of a document needed in evidence, or where the evidence in the case shows it to be in his possession, or that of an accomplice who refuses to produce it on the ground

of its criminating tendency, the state is not obliged to give notice to produce it'. . . .

"The court is without power to compel obedience to such notice and the notice would be futile. Courts should not require vain things to be done. If the notice were required, the prosecuting officer, in the presence of the jury, would have the right to demand the production of the original writing. The accused must then either produce the document, explain its nonproduction, or remain silent. In either circumstance, the result is likely to be highly prejudicial to his case before the jury. The accused, under the Constitution of Pennsylvania, need not be required to testify against himself. He should not be placed in a position before the jury where his action would be tantamount to giving, under compulsion, incriminating evidence against himself."

See also Commonwealth v. Meads, 11 Dist. R. 10.

We believe that any attempt to secure a communication, written or oral, from defendant in a criminal case upon which reliance is to be placed by the Commonwealth, as involving his consciousness of the facts and the operation of his mind expressing it, is a testimonial demand and violative of the constitutional prohibition. In the majority of the jurisdictions the courts appear to treat an incriminating document shown to be in the possession of defendant as inaccessible to the State: 67 A. L. R. 78. Whenever, therefore, a witness is excused from giving testimony on the ground that his answers may tend to criminate him, under constitutional provisions as to self-incrimination, he cannot be compelled to produce his private books or papers which will have the same effect: 70 C. J. 744, sec. 899. The leading case on this subject, according to McKnight v. United States, 115 Fed. 972, 979, is Boyd v. United States, 116 U. S. 616, wherein an order for production by defendant himself of self-criminating documents was properly held to be within the privilege. See discussion of this case on the pertinent

point for decision in 4 Wigmore on Evidence (2d ed.) 867, to 872, both inclusive.

As Lord Camden said in the case of Entick v. Carrington et al., 19 State Trials, 1030, 1073:

"It is very certain, that the law obligeth no man to accuse himself; because the necessary means of compelling self-accusation, falling upon the innocent as well as the guilty, would be both cruel and unjust".

And now, April 12, 1937, the rule heretofore granted is discharged.

From G. Harold Watkins, Frackville, Pa.