## GIBBS *v.* BURKE, WARDEN.

No. 418.   Argued April 21–22, 1949.—Decided June 27, 1949.

*Frederick Bernays Wiener,* acting under an assignment by the Court, argued the cause for petitioner. With him on the brief was *Alvin O. West.*

*Karl W. Johnson* argued the cause for respondent. With him on the brief was *C. William Kraft, Jr.*

MR. JUSTICE REED delivered the opinion of the Court.

This case raises the question whether, under the circumstances of petitioner's trial for larceny in a state court without counsel, Pennsylvania deprived him of a federal constitutional right protected by the due process clause of the Fourteenth Amendment.

Petitioner, a man in his thirties, was arrested in Pennsylvania in 1947 for the larceny of certain clothing and other personal effects allegedly belonging to one James Blades. Upon the return of an indictment he pleaded not guilty, was tried before a jury which found him guilty, and was sentenced to a term of two and one-half to five years in the penitentiary. The record shows neither a request for counsel by the petitioner nor an offer of counsel by the court. Petitioner conducted his own defense.

On May 24, 1948, Gibbs filed in the Supreme Court of Pennsylvania a petition for habeas corpus in which he alleged his arrest, trial, conviction and sentence, and in which he also stated that he "was denied counsel and through ignorance of law and fact was forced to act as his own counsel" and that he "was denied his constitutional Rights as set forth in the Ten Original Amendments, Article VI." Upon the issuance of a rule to show cause, respondent answered, admitting the formal allega-

tions and the fact of trial and sentence, but alleging the following concerning the denial of right to counsel: "The transcript of the notes of testimony taken in the matter does not disclose that the relator demanded counsel nor requested that counsel be appointed to represent him. . . . It is also averred by way of answer that the relator's examination of witnesses and questions asked during the course of the trial fully disclosed his familiarity with legal process in the criminal courts." The answer also attached a transcript of the proceedings at the trial and a transcript of petitioner's criminal record. It showed eight convictions and nine acquittals, discharges, and no true bills. On July 6, 1948, the Supreme Court of Pennsylvania denied the writ. As the allegations of the petition raised grave doubts as to whether petitioner had been accorded due process in his trial, we granted the motion for leave to proceed *in forma pauperis* and the petition for a writ of certiorari. 335 U. S. 867.

James Blades, the prosecuting witness, Mrs. Lafield, his mother, Constable Fleming, the arresting officer, and James Silverstein, a secondhand dealer, testified for the state. Briefly summarized, their testimony tended to prove that petitioner came to Blades' home on the morning of the alleged theft, looked in Blades' room, where the stolen articles were in plain view, and, finding Blades absent, departed. When Blades returned home that day he noticed that the articles were missing from his room and, upon learning from his mother that Gibbs had been there, he notified the police. He and Constable Fleming found some of the missing articles in a pawnshop and found the petitioner in a taproom wearing Blades' hat and watch. Later Blades' wallet was found in the jail cell in which petitioner was incarcerated. Silverstein, the secondhand dealer in the pawnshop, testified that Gibbs had brought the missing clothing in and had sold them to him.

Petitioner, by means of cross-examination, sought to establish that the articles had been taken, and some of them sold, pursuant to an understanding between him and Blades.

Several events occurring at the trial are pertinent to petitioner's claim that failure to appoint counsel violated the Federal Constitution. (1) Considerable inadmissible hearsay and otherwise incompetent evidence was allowed to go in without objection by Gibbs.[1] (2) When petitioner recalled the prosecuting witness Blades for further cross-examination, the trial judge accepted the prosecutor's suggestion and made Blades the petitioner's witness for the purpose of the unfavorable testimony then elicited.[2] Thus he made this testimony binding on the

---

[1] *Blades:* "Then she [witness's mother] tells me about him [petitioner] being there."

*Constable Fleming:* "I got a telephone call from the Chief of Police, Mr. Miller, to go up to Mrs. Lafield's to investigate a robbery that occurred there. . . . I asked Jim, where was the suitcase. He said, the suitcase was by the bed. . . ."

"I went to three pawnshops and they gave me a description of Edward Gibbs . . . ."

The District Attorney's unsworn offer of proof concerning the missing articles was as follows:

"Mr. Johnson: I want to offer into evidence the wallet, the watch, which were identified and found—The watch was found in the possession of the defendant. This wallet, containing the papers of Mr. Blades, which was found in the jail cell that had been occupied by the defendant.

"The Court: What about the radio?

"Mr. Johnson: It has been recovered and returned to the owner."

[2] "The Defendant: May I call the prosecutor [Blades] back on the stand?

"Mr. Johnson: He desires to call the prosecutor as his witness."

In his charge to the jury the judge said with reference to this episode:

"As he has presented no evidence of his own, except having called Mr. Blades and certain questions were asked Mr. Blades and certain answers made; that is the only evidence he presented."

petitioner although the Pennsylvania rule would seem to be that an adverse witness can be so examined and yet remain the witness of the opposing party.[3]   (3) Although, as we have already noted, petitioner attempted to defend himself on the ground that he took and sold the articles pursuant to an agreement with the prosecuting witness, he was prevented from proving a fact clearly relevant to that defense,[4] i. e., that Blades had previously made a baseless criminal charge against him under similar circumstances.[5]   (4) The trial judge also advised petitioner in the presence of the jury, so far as the record shows, as to his opportunity to avail himself of the privilege against self-incrimination which was his under Pennsylvania law.   In doing so he made reference to possible past convictions.[6]   So to require him to claim his con-

---

[3] *Commonwealth* v. *Reeves*, 267 Pa. 361, 362–363, 110 A. 158, 159; *Commonwealth* v. *Eisenhower*, 181 Pa. 470, 476, 37 A. 521, 522.

[4] *Commonwealth* v. *Farrell*, 187 Pa. 408, 423–24, 41 A. 382, 384; see 3 Wigmore, Evidence (3d ed., 1940) § 950.

[5] "Q. Last fall, last year, didn't you wreck your own automobile and enter a complaint that I stole your car and wrecked it?

"Mr. Johnson: Objected to.

"The Court: Objection sustained.  It has nothing to do with this case.

"The Defendant: All right."

[6] "The Court: Now then, Gibbs, you may, if you want to, take the stand and say anything you want to say, but I warn you if you do, if you have any record of any prior conviction, any felonies or any misdemeanors in the nature of what we call crimen falsi, the commonwealth may offer the record of any convictions you may have had.  I am warning you in advance.  You may, however, take the stand and testify or you may refuse to take the stand and if you do refuse to take the stand, the commonwealth and the court may not comment unfavorably about your failure to take the stand and testify.  I want to warn you fully before you do take the stand.

"Do you want to take the stand?

"The Defendant: No, I don't have anything to say in court."

stitutional safeguard in the presence of the jury was, petitioner claims, a violation of Pennsylvania law. Cf. *Philadelphia* v. *Cline*, 158 Pa. Super. 179, 185, 44 A. 2d 610, 613; *Commonwealth* v. *Valeroso*, 273 Pa. 213, 116 A. 828. Respondent does not claim otherwise. The information given by the judge as to past convictions could have been given by a lawyer to the petitioner beyond the jury's hearing. (5) Finally, when sentencing petitioner, the judge used language which, it is claimed, evinced a hostile and thoroughly unjudicial attitude.[7]

---

[7] "By the Court:

"Q. Gibbs, do you have anything to say before we impose sentence?

"A. No, I guess not.

"Q. How long have you been in jail?

"A. Two months and a half.

"Q. What is the matter with you; why can't you keep out of trouble?

"A. I don't know, sir.

"Q. You don't know why you can't do it? What do you do, get drunk or something, or are you just ornery?

"Mr. Johnson: Don't you think this man would be better if he were sent to the Eastern Penitentiary?

"By the Court:

"Q. Do you realize you can be put away for the rest of your life?

"A. (No answer.)

"The Court: It is a wonder the district attorney doesn't indict you for it. You can be indicted.

"Mr. Johnson: If he comes back again, I will take it as my personal job to indict him.

"The Court: In 1928 you were found guilty of burglary, larceny, receiving stolen goods, before Judge Fronefield—one to two years, county jail. In 1931, plead guilty to larceny—$100 fine and costs, one to two years, Judge MacDade. 1932 found guilty of larceny and receiving stolen goods, $50 fine and costs, six months to three years in county jail, Judge Morrow. That is three. 1934 larceny, found guilty, $100 fine and costs, six months to three years in county jail; sentenced to one year in county jail for violation of parole; Judge Fronefield. That is four. 1937, receiving stolen goods, $10

Two procedural points require but brief attention. The federal question was adequately if inartistically raised in the petition for a writ of habeas corpus. We consider insignificant under these circumstances the fact that petitioner cited the Sixth rather than the Fourteenth Amendment to the Constitution.[8] Meticulous insistence upon regularity in procedural allegations is foreign to the purpose of habeas corpus.[9] The state does not contest the propriety of a consideration of the case on its merits.[10] Thus it apparently concedes that habeas corpus was a proper method of testing the constitutionality of the conviction and that it was within the original jurisdiction of the Supreme Court of Pennsylvania.[11]

---

fine and costs, one to three years county jail, sentence suspended by Judge MacDade. That is five. 1938, larceny; found guilty, one and half to three years county jail, Judge Crichton. I don't believe there is anyone you missed up to now. You were before me a year ago. No, just last March. You beat that, not guilty. Now, here you are the seventh time.

"All I can do is give him two and a half to ve years, if you don't want to indict these fourth offenders.

"Sentence

"On No. 417 September Sessions 1947, the sentence of the court is that you undergo imprisonment in the Eastern State Penitentiary at solitary confinement and hard labor for two and a half to five years and stand committed until this sentence be complied with. If I could give you life, I would do it.

"Take him away."

[8] Cf. Price v. Johnston, 334 U. S. 266, 292, and cases there cited.

[9] Tomkins v. Missouri, 323 U. S. 485, 487.

[10] Respondent's brief states: "The issue now to be determined is whether he was properly charged with the offense, tried, convicted and sentenced, under the laws of the Commonwealth of Pennsylvania and the Constitution of the United States, more particularly the portion of the Fourteenth Amendment . . . ."

[11] See Commonwealth ex rel. McGlinn v. Smith, 344 Pa. 41, 24 A. 2d 1; Commonwealth ex rel. Penland v. Ashe, 341 Pa. 337, 19 A. 2d 464.

Since it is clear that a failure to request counsel does not constitute a waiver when the defendant does not know of his right to counsel, *Uveges* v. *Pennsylvania,* 335 U. S. 437, we proceed to the merits. We consider this case on the theory upheld in *Betts* v. *Brady,* 316 U. S. 455, that the Constitution does not guarantee to every person charged with a serious crime in a state court the right to the assistance of counsel regardless of the circumstances. *Betts* v. *Brady* rejected the contention that the Fourteenth Amendment automatically afforded such protection. In so doing, however, it did not, of course, hold or intimate that counsel was never required in noncapital cases in state courts in order to satisfy the necessity for basic fairness which is formulated in that Amendment.

There have been made to this Court without avail arguments based on the long practice as to counsel in state courts to convince us that under the Fourteenth Amendment a state may refuse to furnish counsel even when needed by the accused in serious felonies other than capital. Our decisions have been that where the ignorance, youth, or other incapacity of the defendant made a trial without counsel unfair, the defendant is deprived of his liberty contrary to the Fourteenth Amendment.[12] Counsel necessary for his adequate defense would be lacking.

Respondent argues that to hold to such precedents leaves the state prosecuting authorities uncertain as to whether to offer counsel to all accused who are without adequate funds and under serious charges in state courts. We cannot offer a panacea for the difficulty. Such an interpretation of the Fourteenth Amendment would be an unwarranted federal intrusion into state control of

---

[12] *Uveges* v. *Pennsylvania,* 335 U. S. 437, 441, and cases there cited.

its criminal procedure. The due process clause is not susceptible of reduction to a mathematical formula.[13]

Furthermore, the fair conduct of a trial depends largely on the wisdom and understanding of the trial judge. He knows the essentials of a fair trial. The primary duty falls on him to determine the accused's need of counsel at arraignment and during trial. He may guide a defendant without a lawyer past the errors that make trials unfair. Cf. *Uveges* v. *Pennsylvania, supra.* Failure to protect properly the rights of one accused of serious offenses is unusual. Obviously a fair trial test necessitates an appraisal before and during the trial of the facts of each case to determine whether the need for counsel is so great that the deprivation of the right to counsel works a fundamental unfairness. The recent discussion of the problem in *Uveges* v. *Pennsylvania, supra,* makes further elaboration unnecessary. We think that the facts of this case, particularly the events occurring at the trial, reveal, in the light of that opinion and the precedents there cited, that petitioner was handicapped by lack of counsel to such an extent that his constitutional right to a fair trial was denied. This case is of the type referred to in *Betts* v. *Brady, supra,* at 473, as lacking fundamental fairness because neither counsel nor adequate judicial guidance or protection was furnished at the trial.

A defendant who pleads not guilty and elects to go to trial is usually more in need of the assistance of a lawyer than is one who pleads guilty. The record in this case evidences petitioner's helplessness, without counsel and without more assistance from the judge, in defending himself against this charge of larceny. We take no note of the tone of the comments at the time of the

---

[13] *Betts* v. *Brady,* 316 U. S. 455; *Bute* v. *Illinois,* 333 U. S. 640, 676; *Townsend* v. *Burke,* 334 U. S. 736, 739.

sentence. The trial was over. The questionable issues allowed to pass unnoticed as to procedure, evidence, privilege, and instructions detailed in the first part of this opinion demonstrate to us that petitioner did not have a trial that measures up to the test of fairness prescribed by the Fourteenth Amendment.

Reversed and remanded for proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS concur in the judgment of the Court. They think that *Betts* v. *Brady* should be overruled. If that case is to be followed, however, they agree with the Court's opinion insofar as it holds that petitioner is entitled to relief under the *Betts* v. *Brady* doctrine.

MR. JUSTICE MURPHY and MR. JUSTICE RUTLEDGE concur in the result.