**John HENLEY, Appellant,**

v.

**O. B. ELLIS, General Manager, Texas Prison System, Appellee.**

**No. 15695.**

United States Court of Appeals
Fifth Circuit.

Jan. 6, 1956.

**658**

John Henley, in pro. per.

John Ben Shepperd, Atty. Gen. of Texas, John A. Wild, Asst. Atty. Gen., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

RIVES, Circuit Judge.

When this habeas corpus proceeding was here on former appeal, we held that:

"in some way, by the granting of the writ, the issuance of a show cause order, or otherwise, the pe-

titioner should have the opportunity of developing a record upon which his rights may be intelligently and certainly determined and reviewed." Henley v. Moore, 5 Cir., 218 F.2d 589, 590.

On remand, the district court declined to grant the writ or a show cause order, but did develop a record that permits of intelligent review. The district judge, on further appeal, having refused to issue a certificate of probable cause under 28 U.S.C.A. § 2253, another panel of this Court issued such a certificate and the case was resubmitted on the record and briefs.

The indictment charged that:

"John Henly on the 17th day of April, A.D.1930, * * * did * * * by * * * assault and by violence, and by putting * * * Andres Montemoyor in fear of life and bodily injury, fraudulently and against the will of * * * Andres Montemoyor, take from the person and possession of * * * Andres Montemoyor one gun of the value of ten dollars, the same being the property of * * * Andres Montemoyor, with the intent then and there to deprive * * * Andres Montemoyor of the value of the same, and to appropriate the same to the use of him, the said John Henly."

The jury returned a verdict finding the defendant guilty as charged and assessing his punishment at fifty years in the penitentiary. A conditional pardon issued by the Governor of Texas on May 4, 1934, but later revoked because of appellant's subsequent misconduct, recites:

"* * * District Judge Langston G. King, who presided at the trial of this case, and District Attorney O'Brien Stevens who prosecuted this case, on November 7, 1932, wrote to Governor Sterling, urgently requesting a parole for said John Henly, stating among other things, as follows:

" 'As will be indicated by that letter (June 29, 1932) and the records, young Henly was convicted in October, 1930, after he had been in jail for some time for the offense of robbery by assault. Two other persons were jointly indicted with him. There was a severance granted and young Henly went to trial first and the jury returned a verdict of guilty and assessed a penalty of fifty years in the penitentiary. Some unusual robberies had happened right at that time or just before that time, and I am sure this naturally influenced the jury's verdict somewhat.

" 'The facts showed that Henly and his two companions went to a Mexican's house, evidently to get whiskey. They made a mistake in the house to which they went, but did create quite a disturbance there, Henly being the leader, Henly had a gun, and finally took the shotgun that belonged to the Mexican, that being the only property they took, and after leaving the house a little piece, threw the gun away. This shows that likely there was no intent to commit the offense of robbery. Later on, the other two defendants were tried and acquitted. Henly has been in jail and in the penitentiary now since some time before October 1930, and for his conduct on that occasion, he surely has received ample punishment, in my opinion.' "

The Court of Criminal Appeals of Texas affirmed the judgment of conviction saying in part:

"No faults in the procedure have been perceived and none are pointed out by bills of exception or otherwise. The facts heard by the trial court are not brought up for review.

"The point made in the motion for new trial that the verdict is excessive is one that is not ordinarily available upon appeal." Henly v. State, 117 Tex.Cr.R. 228, 36 S.W. 2d 1018.

About nineteen years later [1] appellant filed a petition for habeas corpus in the Criminal District Court No. 2 of Harris County, Texas, alleging that he had been tried and convicted without benefit of counsel, and was incapable of representing himself adequately. See Betts v. Brady, 316 U.S. 455, 462, 62 S.Ct. 1252, 86 L.Ed. 1595; Uveges v. Pennsylvania, 335 U.S. 437, 441, 69 S.Ct. 184, 93 L.Ed. 127; Gibbs v. Burke, 337 U.S. 773, 780, 69 S.Ct. 1247, 93 L.Ed. 1686. The said Texas District Court heard the evidence and certified it to the Court of Criminal Appeals of Texas, which refused the application for the writ of habeas corpus, saying in part:

"From the evidence found in the record there was quite a controverted issue as to whether or not appellant was represented by counsel. Honorable Sam Hill, an attorney, who filed a motion for a new trial and appealed the case to this court, as shown in Henly v. State, [117 Tex.Cr.R. 228] 36 S.W.2d 1018, was called as a witness. He recognized his handwriting on the pleadings, but had no personal recollection of what occurred. The prosecuting witness in the original trial testified at this hearing that a heavy-set man sat by appellant while he was on trial and that he stood before the jury, after the evidence was in, and talked in favor of Henley.

"As an aggravating circumstance the petition alleges that he had employed counsel through a bondsman but did not know the name of the attorney. He says that when his case was called for trial the attorney

---

1. In his brief on his own behalf, appellant says: "Petitioner reasons for not filing habeas corpus before 1950, he did not know of such until reading of the Johnson v. Zerbst, 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461]; House v. Mayo, 1945, 324 U.S. 42 [65 S.Ct. 517, 89 L.Ed. 739]; Gibbs v. Burke, 1949, 337 U.S. 773 [69 S.Ct. 1247, 93 L.Ed. 1686].

failed to appear and that he filed a motion for a continuance until he could procure the services of an attorney. Documentary evidence introduced fails to indicate that such a motion was filed. It was not alleged as a ground for a new trial. Evidence which we consider conclusive on the issue as to whether or not he was represented by an attorney is found in the court's judgment dated October 9, 1930, which reads as follows: 'This day this cause was called for trial, and the State appeared by her District Attorney, and the Defendant John Henly appeared in person and by Counsel, and both parties announced ready for trial.'

"The question attempted to be raised at this time could have been presented on appeal but it was not. In consequence of the foregoing it is our conclusion that the evidence fails to sustain the allegation. By this we do not mean to indicate that the allegations, within themselves, are sufficient, if proven, to warrant an order releasing relator from custody. Since the grounds alleged were not proven it is not necessary to discuss the question of law." Ex parte Henley, 154 Tex.Cr.R. 558, 229 S.W.2d 810, 811.

Appellant states in his brief on his own behalf:

"Petitioner filed a second petition for habeas corpus in the Highest Court in the State invoking (art. 171, C.C.P. of Texas). Submitted affidavits of 3 new witnesses that was unavailable at the time of the first proceeding this petition was entered under cause No. 74 there was an opinion wrote but not entered, upon motion for rehearing the cause was adjudicated."

On December 4, 1953, the following order appears to have been entered by the Texas Court of Criminal Appeals:

"Ex Parte

"No. 74

"John Henley—Original Application

"Order

"On Motion for Rehearing

"Petitioner has misunderstood our original order herein. The motion for new trial in our Cause No. 14,-209 (Henley v. State [117 Tex.Cr.R. 228], 36 S.W.2d 1018) raised the question of lack of representation upon the trial. In rendering our opinion we did not discuss this question. We do not, and cannot, write on every question raised upon an appeal, but an affirmance of the judgment is an adjudication of all questions raised.

"The motion for rehearing is overruled.

"Morrison, Judge."

Certiorari was denied by the Supreme Court of the United States on April 26, 1954. Henley v. Moore, 347 U.S. 956, 74 S.Ct. 682, 98 L.Ed. 1101. It appears that in the interim the District Court of the Eastern District of Texas had also denied a petition for habeas corpus filed by appellant, and that appeal from that judgment had been dismissed. 344 U.S. 931, 73 S.Ct. 500, 97 L.Ed. 716. The ground for each petition, so far as appears, has been that appellant was denied due process of law because he was not represented by counsel and was not able adequately to defend himself.

In Brown v. Allen, 344 U.S. 443, 458, 73 S.Ct. 397, 408, 97 L.Ed. 469, the Supreme Court said:

" * * * where there is material conflict of fact in the transcripts of evidence as to deprivation of constitutional rights, the District Court may properly depend upon the state's resolution of the issue. Malinski v. New York, 324 U.S. 401, 404, 65 S.Ct. 781, 783, 89 L.Ed. 1029. In other circumstances the state adjudication carries the weight that federal practice gives to the conclusion of a court of last resort of another

jurisdiction on federal constitutional issues. It is not res judicata."

The evidence certified to the Texas Court of Criminal Appeals, and upon which it refused the writ for reasons heretofore quoted, Ex parte Henley, 154 Tex.Cr.R. 558, 229 S.W.2d 810, 811, is copied in the record on this appeal. Five additional affidavits were introduced. Let us examine the evidence as to whether appellant was in fact represented by counsel. John Henley testified:

"I did not have counsel representing me at the actual trial. * * *

"I had talked with Mr. Lang Smith, the bondsman, who had made my bond up until the Grand Jury indictment, and he said he was going to get me an attorney. I was relying on what Mr. Smith told me.

"When I was brought in here to be tried and the State announced ready, I did not announce ready in the case. I asked for a continuance on the grounds that my attorney was not present, and that I wasn't legally being represented. * * *

"At the time I was brought into court to be tried in the case where I received fifty years I was under the impression that I had counsel to represent me. I was under that impression until I got into the court room and the State announced ready for trial, and my counsel was not here. * * *

"The jury brought in a verdict of 'guilty' and assessed a term of fifty years. Then two days later I had a motion for a new trial filed, which was filed by Attorney S. F. Hill.

"I see the date on that motion for new trial is October 11, 1930. It was sworn to before S. F. Hill, Notary Public, Harris County, Texas. S. F. Hill was my lawyer at that time, but he was not here at the actual trial. He was my lawyer when I signed the motion for a new trial.

"Mr. Hill was not here on the trial two days before that motion was filed. I made a deal with Mr. Lang Smith agreeing to pay him a certain amount of money to take care of the bond and the attorney.

"When I was brought into court to be tried I explained to the court that I understood that Mr. Smith was to see that I had an attorney."

*The motion for new trial filed October 11, 1930, two days after the jury returned its verdict contained the following ground:*

"2. Because the defendant was under the impression that arrangements had been made for an attorney to represent him and defendant did not know this was not a fact until his case was called for trial and at this time it was too late to secure the services of an attorney; that defendant was in jail and had no way to know that he was not being represented by counsel; that defendant is only a few months past nineteen years of age, is unfamiliar with court procedure and it was no fault of his that he was not represented by an attorney. Defendant would respectfully show to the court that owing to the seriousness of the charge against him, that he should be entitled to have the services of an attorney."

Andres Montemoyor testified on direct examination:

"* * * On April 17, 1930, I was held up and robbed of some property. I was in court at the time the man that robbed me was tried. I testified as a witness in the case. I identified the man on trial as the man who had robbed me. I still recognize him. He is the man sitting on the right side (The Relator).

"The case was tried on the 9th of October, 1930. When the case was called for trial I did not hear the defendant say anything about wanting the case put off. He didn't say anything to the judge about whether he had a lawyer or didn't, that I heard.

"At the trial there was a heavy set man that was talking here in his

favor; I don't know if he was his lawyer or not.

"There was a heavy set man was represent (sic) him at that time when the trial came up; I don't know if he was his attorney or what. That man was in the middle there, talking in his favor, talking in the defendant's favor. He talked to the jury.

"This man that seemed to be representing the defendant did not ask me any questions. He just faced the jury and talked to the jury in his favor.

\* \* \* \* \* \*

"The man that talked for the defendant was sitting on his side, and then he talked to the jury. He was standing up when he was talking to the jury. That was after I testified.

"I think he was sitting close to the defendant, side by side."

On cross-examination, he testified:

"The man I seen, he was sitting there, and after he get up and talk to the jury. That's the only one I know. He was the only one that spoke to the jury, and the only one that asked any questions. I don't know if he was the district attorney prosecuting this defendant or who it was."

"I don't know who the lawyer was that asked me the questions and spoke to the jury. I do know there was a heavy set man here, and he was the only one in the court that had anything to do with the trial of the case when this defendant was tried."

On re-direct examination, he testified:

"When the time came for the jury to take the case this man stepped in front of the jury and talked to the jury in favor of the defendant.

"I didn't see anybody talk to the jury on the State's side. I don't remember; it's so many years, but I know the man spoke right there in front of the jury.

"One man asked me questions just like you are asking me questions on this side of the table. There were lawyers on each side of the table. That lawyer got up and talked to the jury. That one lawyer over there talked to the jury.

"The one that was sitting on the side of the table where you (Mr. Branch) are was the one that was asking the questions, the prosecuting attorney, but that ain't the same one that was sitting on that side, by the defendant."

Ray Clark, Deputy Criminal District Clerk of Harris County, Texas, testified that no motion for continuance was filed in the case, that a motion for new trial was filed,

"that the records of our office shows that there was an application made for subpoena made for the defendant and signed S. F. Hill, Attorney, \* \* \* but that subpoena was issued for the two State witnesses after the trial. The trial was on October 9th, and that subpoena was issued the 18th of October. The application is dated October 17, 1930, which was after the trial was over. At the time of the trial no witnesses had been applied for by the defendant, although he had been under indictment for quite a long time. \* \* \*

"I can only go by the judgment record, and the judgment record shows he had counsel. \* \* \*

"The only record I have pertaining to an attorney for him was the time when the motion was filed for a new trial, except the judgment record. The judgment record shows he had counsel on the main trial."

The copy of the judgment appears in the record on a printed form with only the name, John Henly, typed in the following recital:

"This Day this cause was called for trial, and the State appeared by her District Attorney, and the De-

fendant .... John Henly .... appeared in person and by Counsel, and both parties announced ready for trial."

Mr. Sam F. Hill testified:

" * * * I have been practicing law since 1902. I have been practicing law in Houston since 1924. Prior to that time I practiced at Livingston.

"I do not have a very clear recollection of the case of State of Texas versus John Henly back in 1930, but I do have a slight recollection of it.

"That is my signature on the motion for new trial in that case. I swore him to the motion. I do not recall the contents of that motion.

"I couldn't say that I remember representing this man twenty years ago before this court, but that is my signature on the motion. * * *

"It has been so long ago and I have had so many cases, all I can say his face looks familiar to me, but I couldn't say positively whether I represented him on the trial or not. My best recollection is that I represented him, but I couldn't be positive about it.

* * * * * *

"I was a Notary Public at that time, and I took his acknowledgement as a Notary Public.

"I don't remember that he was charged with robbery of a Mexican man and mistreating a Mexican woman. I don't recall the case at all.

"I was born in 1877."

Lang Smith testified:

" * * * I have lived in Houston about twenty-eight years.

"I haven't seen him in a long time, but I used to know a John Henly a good many years ago. I made bond for John Henly in 1930. I was in the court when his case was tried at that time. He was not represent-

ed by any attorney at that time. He had employed Judge Sam Hill to represent him, but he wasn't there at that time. * * *

"I don't remember just exactly what the defendant said about being ready for trial at that time, but I think I told the Judge that his attorney wasn't here, and he wasn't ready for trial. He was tried anyway."

Ray Clark, the Court Clerk, being recalled testified:

"The judge's docket of October 9, 1930, with reference to whether they announced ready or not in this case, reads:

" 'October 9, 1930. Both ready.'

* * * * * *

"That announcement is made in the judge's own handwriting.

"I was not in the court room when the case was tried. I am testifying from the records."

Honorable Langston C. King, Judge of Criminal District Court No. 2 of Harris County, Texas, testified:

"I was the judge presiding in Criminal District Court No. 2 of Harris County at the trial of John Henley, who was charged by indictment with the offense of robbery by assault, held on October 9, 1930.

"I am not positive that Henley was represented by counsel at the trial, but it is my recollection that Henley was represented by a local Attorney named Hill throughout the trial. It is my recollection that the Attorney was not present at the time the case was called, but that he appeared prior to the time the jury was selected and empaneled and was present and represented Henley throughout the trial. It is noted that the judgment states that Henley 'appeared in person and by counsel.' " [2]

2. In connection with this certificate of Judge King, for whom we have the highest regard and respect, it may be noted that, at the time of the trial in 1930 and for a number of years thereafter, the general consensus of opinion in Texas,

Five affidavits, in addition to the transcript of evidence before the Texas Court of Criminal Appeals, were introduced on behalf of the appellant. The affidavits of G. F. Tucker, C. A. Richardson, and Earl H. Hendley are each to the effect that:

"I attended the trial of John Henley in Judge Langston G. King's Court #2 on October 9, 1930. John Henley was tried for robbery by assault and given a 50 year sentence. He had no legal representation at the trial."

The evidence of the attorney, S. F. Hill, was materially strengthened by an affidavit dated February 26, 1955, as follows:

"This is to certify that I, S. F. Hill, an attorney at law, was employed to represent John Henley, at his trial for robbery by assault in Judge Langston King's Criminal District Court #2, Harris County, Texas, on October 9, 1930. I was sick at the time of the trial and unable to defend Mr. Henley. The trial went on and he was given a 50 year sentence.

"After I was able to get out and go to court, I asked Judge King to give my client, John Henley, a new hearing and it was refused."

■ Recognizing that a federal court should not upset the judgment of a state court except for the most impelling of reasons essential to the preservation of federal constitutional rights, we have thus set forth at so much length the evidence in the record.

From that evidence, we conclude that both the Court of Criminal Appeals of Texas and the learned district judge have been unduly impressed with the weight to be accorded the recital in the judgment of conviction that Henley "appeared in person and by counsel." The district judge underscored those words for emphasis. The Texas Court of Criminal Appeals [154 Tex.Cr.R. 558, 229 S.W.2d 811] quoted the recital as "Evidence which we consider *conclusive* on the issue as to whether or not he was represented by an attorney". The same claim of "conclusive presumption" prevented O'Neal Massey from asserting his constitutional rights for many years until the trial judge and the prosecuting attorney certified that the record of the judgment was not correct and that Massey was not represented by counsel at his trial. Massey v. Moore, 5 Cir., 205 F.2d 665, 671. The Supreme Court held that Massey was entitled to a hearing. Massey v. Moore, 348 U.S. 105, 75 S.Ct. 145. On such hearing, the district court held that Massey's conviction was "null and void." Massey v. Moore, D.C.S.D. Tex., 133 F.Supp. 31, 35.

■ While a different idea prevailed for many years, it should now be clear that a judgment recital that a defendant appeared by counsel is not so potent as to constitute an insuperable barrier to the assertion by such defendant of his constitutional rights, through evidence going to show that the purported judgment, including such recital, is in fact null and void because the court had lost jurisdiction to proceed against the defendant denied the benefit of counsel. A fortiori is that true when the "conclusive" recital is part of a printed form.

The positive and unequivocal testimony of the appellant, of his bondsman, Mr. Lang Smith, of G. F. Tucker, C. A. Richardson and Earl H. Hendley, and now (though not when the Texas court ruled), of the attorney, Mr. Sam F. Hill,

and in many other states, was that due process did not require in any felony case less than capital that a defendant not represented be offered the appointment of counsel. See Betts v. Brady, 316 U.S. 455, 469, 62 S.Ct. 1252, 86 L. Ed. 1595, and Texas cases cited in Footnote 25 thereto, among others one decided in 1932 stating, "In a felony case less than capital, the law does not make the presence of an attorney essential. It recognizes the right of the accused to be represented by counsel, but imposes upon him the duty of using diligence in securing representation." Faggett v. State, 122 Tex.Cr. 399, 55 S.W.2d 842, 844.

are all to the effect that appellant was not represented by counsel at his trial. Their testimony has corroboration of the strongest kind in the explicit terms of ground 2 of the motion for new trial, which has heretofore been quoted and which was filed two days after the jury's verdict. It is extremely unlikely that such a motion would have been filed at a time when the facts were so fresh in the minds of every one unless it had been true. Indeed, if it had been false, the attorney who, with personal knowledge of the true facts, signed the jurat as a Notary Public, would have been subject to severe discipline, and the appellant could readily have been punished for contempt or even for perjury.

As opposed to such positive and strongly corroborated evidence, we have the certificate of the conscientious trial judge, heretofore quoted, who conceded that "I am not positive that Henley was represented by counsel at the trial", the judgment entry already fully discussed, and the testimony of the victim of the robbery, Mr. Andres Montemoyor, heretofore quoted, who conceded that only one lawyer asked questions or talked to the jury and, "I don't know if he was the district attorney prosecuting this defendant or who it was."

In our opinion, the decided preponderance of the evidence in this record is to the effect that appellant was not represented by counsel and that he could not adequately defend himself. Certainly, the evidence was sufficient to require the issuance of the writ and a full trial with the appellant present.

Appellant's atrociously bad prison record was filed by the State and quoted by the district court. In his pencilled pro se brief, it seems to us that appellant makes an eloquent response: "There would not be a prison record if petitioner could have had a trial like his 2 co-defendants." The terms of that brief give evidence of a resentful but nonetheless intelligent man, one who, in his old age, it may reasonably be hoped and prayed, will prove to be a law abiding person. If not, it nevertheless remains true that a sane man cannot be imprisoned for preventive reasons only. Even the most lawless is entitled to due process of law.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.