THE STATE OF OHIO, APPELLEE, *v.* PORCARO, APPELLANT.

(No. 4928—Decided November 13, 1956.)

Mr. *Harry Friberg,* prosecuting attorney, and Mr. *Francis A. Pietrykowski,* for appellee.

Mr. *R. Brooke Alloway,* Mr. *David W. Carroll* and Messrs. *Cobourn, Yager, Notnagel, Smith & Beck,* for appellant.

CONN, J.  On June 4, 1948, the grand jury returned an indictment against defendant wherein defendant was charged with having committed burglary on May 30, 1948, in the night season, and also grand larceny.  On June 9, 1948, the defendant appeared in court for arraignment.  The transcript of the proceedings recites:

"Defendant present in court without counsel and apparently insane and completely without understanding, the court entered a plea of not guilty for him.  * * * It is ordered that defendant be committed to the Lima State Hospital for not more than one month for examination and report on his mental condition."

On the same day, warrant of commitment was issued and delivered to the sheriff, and the return thereof filed June 22, 1948.

The transcript of the proceedings discloses further that on October 18, 1948, the defendant was present in court, and that upon examination of the report of the superintendent of the Lima State Hospital, the court found that defendant was not sane and ordered that defendant be committed forthwith to the Lima State Hospital until restored to reason.

It appears from the transcript that defendant was again present in court on April 6, 1949, and that the court had before it "the report of Dr. R. W. Bushong of March 18, 1949, that the defendant was brought before the staff recently, it was decided that he is now restored to reason and should be returned to your court for further disposition."

The transcript of the record further discloses that on the same day, that is, April 6, 1949, the defendant withdrew his former plea of not guilty and entered a plea of guilty as charged in the indictment. Thereupon, defendant was sentenced to the Ohio Penitentiary, as shown by the docket and journal entries, to wit:

"April 6, 1949, the defendant, Joseph Porcaro, is sentenced to the Ohio Penitentiary until released according to law and is ordered to pay all costs of prosecution, the violation of Sections 12438 and 12447 of the General Code of the state of Ohio."

Thereafter, on July 2, 1956, the court granted defendant's application for leave to appeal, pursuant to the procedure provided for in Section 2953.05, Revised Code, and this cause thereafter came on for hearing and was submitted on oral arguments and briefs of counsel.

The defendant's assignments of error are:

1. That the trial court erred in sentencing defendant for burglary of an inhabited building in the night season under Section 12438, General Code.

2. That the defendant can be charged with but one offense under the indictment.

The averments in the indictment, material here, charging burglary and larceny, are as follows:

"* * * that Joseph Porcaro, on the 30th day of May, A. D. 1948, in the night season of the said day, to wit, about the hour of 5:00 o'clock, in Lucas County, Ohio, unlawfully, maliciously, and forcibly broke and entered a certain building, to wit, a cafe, of W. A. Williams, located in said building, and certain money of the amount and value of One Hundred Eighty-six and 73/100 Dollars ($186.73), the personal property of the said W. A. Williams, in the said building then and there being found, then and there unlawfully stole, took and carried away * * *."

It is charged in the indictment that the offense was committed in the night season on May 30, 1948, about the hour of 5:00 o'clock. The indictment is silent as to whether the alleged crime was committed at 5:00 o'clock a. m. or 5:00 o'clock p. m.

Defendant contends that under the rule, the averments in the indictment are construed more strongly against the state, and that the court may take judicial notice that the offense,

whether committed on the morning of May 30 or in the evening, could not have been committed during the night season.

In view of the contention made by defendant, it becomes necessary to examine certain sections of the Ohio Code of Criminal Procedure.

We first call attention to Section 13437-6, General Code (Section 2941.07, Revised Code), which outlines the material averments necessary in charging certain offenses. We quote that part relating to burglary, as follows:

"Burglary. A. B. maliciously and forcibly broke and entered the dwelling house of C. D. in the night season with intent to commit larceny, murder, or robbery therein * * *."

This section also contains a general provision that upon request the prosecuting attorney shall furnish a bill of particulars "setting up specifically the nature of the offense charged."

The defendant, when finally arraigned, pleaded guilty to the charges of burglary and larceny, no attack having been made on the form of the indictment.

The reported cases recognize the rule that an indictment which substantially follows the form prescribed by statute is sufficient and is not demurrable, subject, however, to the right of the defendant to a bill of particulars when demand therefor is timely made. *Pierpont* v. *State,* 49 Ohio App., 77, 195 N. E., 264.

We also call attention to Section 13437-29, General Code (Section 2941.30, Revised Code), wherein liberal provision is made for amending an indictment "at any time before, during or after the trial * * *," and the further provision that no appeal shall be sustained unless "the reviewing court finds that the accused was prejudiced in his defense or that a failure of justice resulted."

In *State* v. *Holt,* 59 Ohio App., 309, 17 N. E. (2d), 947, it was held that Section 13437-29, General Code (Section 2941.30, Revised Code), is *in pari materia* with Section 13437-25, General Code (Section 2941.26, Revised Code). This latter section modifies the common-law rule relating to variance, and in construing this section, the courts appear to establish the rule that unless the variance is material or is prejudicial, an acquittal of defendant is not justified.

See, also, Section 13449-5, General Code (Section 2945.83, Revised Code), which imposes limitations on a reviewing court and in express terms provides that no judgment of the court shall be reversed "* * * unless it appears affirmatively from the record that the accused was prejudiced thereby or was prevented from having a fair trial." See *State* v. *Farmer*, 90 Ohio App., 49, 103 N. E. (2d), 289.

It is the opinion of the court that the particular averment in the indictment that the offense was committed at a certain hour on the night of the 30th day of May is surplusage or at most an immaterial variance, when viewed in the light of the statutes and the reported cases.

We first call attention to Section 13437-7, General Code (Section 2941.08, Revised Code), which contains provisions relative to defects which do not render an indictment invalid, and quote the following provision:

"(I) For surplusage or repugnant allegations when there is sufficient matter alleged to indicate the crime and person charged."

See, also, the earlier statute, Section 13581, General Code.

We call attention to the rule relating to variance generally, found in 21 Ohio Jurisprudence, 837, Section 141:

"It is now a general rule that a variance is not to be regarded as material unless it may prejudice or mislead the defense, or expose the accused to the danger of being twice put in jeopardy for the same offense."

See: *State* v. *Turnbaugh*, 79 Ohio St., 63, 85 N. E., 1060; *Angeloff* v. *State*, 91 Ohio St., 361, 110 N. E., 936; *Tesca* v. *State*, 108 Ohio St., 287, 140 N. E., 629; *Massa* v. *State*, 37 Ohio App., 532, 175 N. E., 219.

The foregoing considerations apply to a judgment entered on a plea of guilty to an indictment for a criminal offense, relative to the exactness of the time the accused committed the wrongful act, so long as all the material facts necessary to be proved are set forth with reasonable certainty.

In the light of the statutes and reported cases, it is the opinion of the court that the assignment of error now under consideration should not be sustained.

In his second assignment of error, the defendant claims that he "can be charged with but one offense under the indictment." It is suggested in defendant's brief that "while the defendant might be guilty of both the offenses of burglary and grand larceny, he could be sentenced only on the over-all inclusive offenses of burglary * * *." The fallacy of defendant's claim is apparent in view of the fact that the indictment charges two offenses, one for burglary and the other for larceny.

Although charged in one count, the offenses charged are separate and noninclusive, and the general rule that two offenses may not be joined in the same count of an indictment does not apply to burglary and larceny, when larceny is committed with the burglary. 8 Ohio Jurisprudence (2d), 310, Section 29.

The court sentenced the defendant, upon his plea of guilty, to the Ohio Penitentiary, for violation of Sections 12438 and 12447, General Code. The penalty for burglary of an uninhabited dwelling is imprisonment for not less than one nor more than fifteen years; and for grand larceny the penalty is imprisonment for not less than one nor more than seven years.

Where two sentences of imprisonment have been imposed on the same person, and the record is silent as to whether the sentences are to be served cumulatively, there is a presumption that the court intended that the prisoner should serve the aggregate time of both imprisonments. 12 Ohio Jurisprudence, 702, Section 683; *Anderson, Sheriff,* v. *Brown,* 117 Ohio St., 393, 159 N. E., 372; *State, ex rel. Dye,* v. *Alvis, Warden,* 86 Ohio App., 137, 90 N. E. (2d), 416.

It is the conclusion of the court that defendant's second assignment of error should not be sustained.

In view of the court's further consideration of the record in this case, it is pertinent to note it affirmatively appears that the proceedings in the trial court relating to inquiry into the insanity of defendant were in accord with the statutes. See Sections 13441-1 and 13441-2, General Code (Sections 2945.37 and 2945.38, Revised Code).

These sections outline the procedure when the question of insanity of the defendant is raised, from the time the accused

is bound over to the Common Pleas Court or committed to its jurisdiction until the issue of insanity is resolved, or until after trial and sentence has been pronounced.

Section 13439-2, General Code (Section 2941.50, Revised Code), provides that upon service of a copy of an indictment, "the accused shall be brought into court, and if he is without counsel and unable to employ counsel, the court shall assign him counsel * * *." The constitutional right of defendant to have counsel is thus affirmed by statute and in mandatory language.

In the instant case, it does not appear that the trial court called the attention of defendant to his constitutional rights or advised him that in the event he "is without and unable to employ counsel," the court would appoint counsel to represent him, as provided for by statute. While defendant's plea of guilty raises a presumption of a waiver of his right to have counsel, we are of the opinion that the presumption thus raised is rebutted by the record and the particular facts and circumstances disclosed therein. 15 Ohio Jurisprudence (2d), 342, Section 112; *In re Burson,* 152 Ohio St., 375, 89 N. E. (2d), 651, certiorari denied, 339 U. S., 969, 94 L. Ed., 1377, 70 S. Ct., 986.

In view of the record, the court, on its own motion, has given consideration to the legal effect of defendant's plea of guilty, the acceptance of said plea by the court and the validity of the judgment entered thereon.

Two questions are presented. First, is there raised on the record in the case, when viewed in the light of all the facts and circumstances, an inference tending to rebut the presumption which obtains relative to the proceedings of courts of general jurisdiction? We call attention to the well-known rule of wide application that a judgment entered by a court of general jurisdiction, having jurisdiction of the parties and subject matter of the action, is valid until reversed or set aside. The rule is applicable whether the attack on the judgment is direct, as in the early case of *Kingsborough* v. *Tousley,* 56 Ohio St., 450, 47 N. E., 541, or collateral, as in the case of *In re Burson* (152 Ohio St., 375), *supra.*

However, the record before us discloses that the accused, upon arraignment ten days following the commission of the crime, was apparently insane.

The defendant was brought into court nine months later and withdrew his plea of not guilty and entered a plea of guilty. Nothing is disclosed in the record that the trial court advised defendant at that time of his constitutional rights or that it followed the statute authorizing the assignment of counsel in the event the defendant was unable to employ counsel.

The second question presented is: Was the defendant accorded due process within the meaning of the Fifth and Fourteenth Amendments to the federal Constitution?

What constitutes due process, as applied to judicial proceedings, is defined in 16A, Corpus Juris Secundum, 541, Section 567, as follows:

"In judicial proceedings, due process of law means law in its regular course of administration through courts of justice, in accordance with the fundamental principles of free government, or a course of proceeding according to those rules and principles which have been established for the protection and enforcement of private rights."

In 12 American Jurisprudence, 283, Section 586, a statement of the general rule is as follows:

"The requirements of due process of law extend to every case of the exercise of governmental power. The limitations inherent in the requirements as to due process of law are binding equally on the United States and on the several states."

The issue of due process, as to its meaning and application, has been raised in numerous cases. It is not practicable to review them here. We call attention to the somewhat recent case of *Uveges* v. *Pennsylvania,* 335 U. S., 437, 93 L. Ed., 127, 69 S. Ct., 184. In that case, the Supreme Court considered the legal consequences of a plea of guilty in relation to the facts disclosed on the record. It appears that the defendant was a youth of seventeen years and had entered a plea of guilty without having counsel or being advised of his right to counsel. The court held that "the opportunity to have counsel in the case was a necessary element of a fair hearing." We quote the third paragraph of the L. Ed. headnotes:

"The due process clause of the Fourteenth Amendment and the Fifth Amendment require counsel for all persons charged with serious crimes, when necessary for their adequate

defense, in order that such persons may be advised how to conduct their trial.''

See: *Pennsylvania, ex rel. Herman,* v. *Claudy,* 350 U. S., 116, 100 L. Ed., 126, 76 S. Ct., 223; *Gibbs* v. *Burke, Warden,* 337 U. S., 773, 93 L. Ed., 1686, 69 S. Ct., 1247; annotation, 3 A. L. R. (2d), 1003 (duty to advise accused as to right to assistance of counsel).

Without extending this discussion further, it is the conclusion of the court that the record in this case tends to rebut the presumption that due process under the state and federal Constitutions was accorded defendant in the trial court.

The judgment is reversed and the cause is remanded to the trial court for a new trial or for further proceedings according to law.

*Judgment reversed and cause remanded.*

DEEDS and FESS, JJ., concur.