Petition of Charles W. GARTON,
Petitioner,

v.

Harry S. TINSLEY, Warden, Colorado
State Penitentiary, Respondent.

Civ. No. 6092.

United States District Court
D. Colorado.

March 11, 1959.

388

Bruce Ownbey, Denver, Colo., for petitioner.

John W. Patterson, Asst. Atty. Gen., State of Colorado, for respondent.

ARRAJ, District Judge.

In April, 1945, petitioner and one Freeman were serving sentences at a penal institution in the State of New Mexico when they escaped from that institution and came to Pueblo, Colorado.

On April 14, 1945, the petitioner and his companion, Freeman, believing that their presence was known to the police, decided to leave Pueblo. Upon leaving their hotel room with intent to steal an automobile, they saw a car stop in front of a drugstore. A man got out of the automobile, leaving the motor running, and entered the drugstore. Due to the fact that it was snowing heavily, the petitioner and Freeman were not aware of the presence of the man's wife in the automobile until they opened the door. When petitioner told the woman to get out of the car, she refused to do so. Freeman then entered the back seat and petitioner entered the front seat of the car. They again instructed the woman to get out of the car and she again refused. Petitioner then backed the car away from the curb; the distance the car was moved is not clearly shown in the record. During this time the woman sounded the car horn, or in some manner drew the attention of her husband, who had previously entered the drugstore. The husband either entered the car or jumped onto the running board and attempted to take the keys from the ignition. After he was severely pistol-whipped by Freeman, he succeeded in extracting the keys. At this time, petitioner and his accomplice abandoned the car and returned to their hotel room.

They were subsequently apprehended by the Pueblo police. However, the record does not indicate clearly whether they were arrested on Sunday, April 15th or Monday, April 16th. Shortly after their arrest, petitioner and his accomplice signed a statement admitting the events which occurred on April 14, 1945. The petitioner and Freeman contend that this statement was a confession to attempted car theft and assault and battery; whereas, the prosecution's witnesses deny this contention, although a Deputy District Attorney testified that it was not beyond the realm of possibility for the statement to have been labeled "attempted car theft and assault and battery". This statement has never been produced.

On April 16, 1945, an Information was filed in the District Court of Pueblo County against petitioner and his associate charging them with kidnapping. They were arraigned on the same date and each plead guilty to the charge. After the Court heard testimony to aid it in determining what punishment should be imposed, they were immediately sentenced and promptly taken to the Colo-

rado State Penitentiary, where petitioner is presently in custody.

At the arraignment, petitioner did not ask for counsel, and he was not advised of his right to counsel or offered counsel. The Information was read to the petitioner and the consequences of the plea of guilty were explained to him. After the Information had been read, the petitioner stated to the Court in substance, "That he did not believe that the charge contained in the Information was applicable to the facts." The Judge then read portions of the Colorado Statutes concerning the crime of kidnapping to petitioner, and after some unreported colloquy between the petitioner and the Judge, the petitioner stated, "Well, I guess I will have to plead guilty then."

No writ of error was sued out from these proceedings.

In May of 1952, petitioner filed in the District Court of Pueblo County, Colorado, his Motion to Vacate Judgment and Sentence and for Leave to Withdraw Plea of Guilty and to Rearraign, which instrument was treated as a writ of error coram nobis. A hearing was held on that motion on August 15, 1952, before the Judge who had previously sentenced petitioner. The motion was overruled and dismissed by the Court. On appeal, the decision was affirmed by the Colorado Supreme Court without opinion in August, 1953. Freeman v. People, 128 Colo. 99, 260 P.2d 603. Petitioner then applied to the Supreme Court of the United States for a writ of certiorari, which application was denied.

While serving the sentence imposed, petitioner became involved with certain other inmates in an attempted prison escape. In April, 1954, he was sentenced by the District Court of Fremont County, Colorado, to serve an additional sentence of from 10 to 14 years, on charges of assault to murder, in connection with said escape attempt. The record does not disclose whether the latter sentence was to run concurrently with or consecutively to the sentence originally imposed by the Pueblo County District Court.

On August 19, 1954, petitioner's co-defendant, R. L. Freeman, filed a petition for a writ of habeas corpus in the District Court of Pueblo County. That petition was based on substantially the same allegations and facts as were contained in the Motion to Vacate Judgment. The District Court of Pueblo County, after hearing, denied the petition, and, on appeal, the Supreme Court of Colorado affirmed that decision. Freeman then applied for a writ of certiorari to the Supreme Court of the United States. The application was denied. Although petitioner here has not filed a petition for writ of habeas corpus in the state court, counsel agree that the basis for such petition would be the same as in the Freeman case and the facts adduced in support thereof would be substantially the same. A copy of the record in the Colorado Supreme Court is in evidence; and by stipulation of counsel, this Court may consider all factual matters contained therein.

Petitioner here contends that he has exhausted all of his state remedies and is now entitled to relief by writ of habeas corpus from this Court.

28 U.S.C.A. § 2254 imposes the requirement that before one in custody under judgment of a state court may petition a federal court for relief, he must either have exhausted all available state remedies, or demonstrate that those remedies are unavailable or ineffective to protect his rights.

Here, petitioner's attempt at coram nobis was denied as being the wrong remedy, and this was affirmed by the highest court of the state without opinion. Although he has sought no further relief in the state courts, his accomplice and co-defendant, Freeman, did seek relief through habeas corpus in the state courts on the same grounds as those presented here, and on the facts which differed in no material respect from those in the instant case. It is conceded that relief was denied on the merits by the highest court of the state, and certiorari was denied by the United States Supreme

Court, Garton v. People of State of Colo., 346 U.S. 911, 74 S.Ct. 242, 98 L.Ed. 408. On these facts, and relying also upon the stipulation of counsel concerning the use of the record in the Freeman case, in this proceeding, it is the opinion of this Court that petitioner has adequately demonstrated that further attempts at relief through the state courts would be ineffective to protect his rights.

Coming then to the merits. It is claimed that the seriousness of the charge, the age of the petitioner and his lack of legal experience, combined with other factors, make the failure to appoint counsel a denial of due process of law under the Fourteenth Amendment to the Constitution of the United States. Petitioner also contends that the speediness of the proceedings caused a denial of due process. His contentions are interrelated and should therefore be considered together.

■ The rule concerning the right to counsel in non-capital felony cases in state courts, as stated by the United States Supreme Court, is:

"* * * where a person convicted in a state court has not intelligently and understandingly waived the benefit of counsel and where the circumstances show that his rights could not have been fairly protected without counsel, the Due Process Clause invalidates his conviction;" Com. of Pennsylvania ex. rel. Herman v. Claudy, 1956, 350 U.S. 116, 118, 76 S.Ct. 223, 224, 100 L.Ed. 126.

In applying this rule, however, each case stands on its own facts. It is proper to consider such facts as the gravity of the crime; the age, education and intelligence of the defendant; the conduct of the Court; the complicated nature of the offense charged and the possible defenses thereto; and the defendant's prior experience in Court. Moore v. Michigan, 1957, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed. 2d 167; Uveges v. Pennsylvania, 1948, 335 U.S. 437, 441, 69 S.Ct. 184, 93 L. Ed. 127; Bute v. Illinois, 1948, 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986; Betts v. Brady, 1942, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595.

Here, the essential facts in evidence are not in dispute. Petitioner signed a statement admitting all the facts of the occurrence. At the time of arraignment, the Information charging kidnapping was read at length to petitioner, who at that time first learned that he was to be charged with kidnapping. The petitioner expressed doubt that he was guilty of the charge, but, after the Court answered several questions from him and read the Colorado Statute concerning kidnapping to him, petitioner plead guilty.

Petitioner was twenty-four years of age on the date of arraignment; he had a seventh grade education; and, although the record discloses that he had at least two previous convictions, there is no evidence of the amount or type of previous experience petitioner may have had in Court.

There is no evidence of coercion on the part of the police or prosecuting officials, and no proof of false representations or promise of leniency.

However, the crime with which petitioner was charged is grave and of a complicated nature. The record does not disclose how much of the Colorado Statute concerning kidnapping was read to petitioner at arraignment, but a reading of the statute [1] discloses that all or any

---

1. C.R.S.1953, 40–2–44. *"Kidnaping defined.*—A person shall be guilty of kidnaping who willfully:

"(1) Abducts, steals away or secretes any man, woman or child, forcibly or otherwise; or

"(2) Without lawful authority seizes, confines, imprisons, keeps or detains another against his will, forcibly or otherwise, within the state or to be sent out of the state; or

"(3) Abducts, entices, takes or carries away another, forcibly or otherwise, from a place without the state, or procures, advises, aids or abets such an abduction, enticing, taking or carrying away, and afterwards sends, brings, has or keeps such person or causes him to be kept or secreted within this state; or

"(4) Seizes, takes, carries or sends, forcibly, or otherwise, or causes to be seized, taken, carried or sent, forcibly

portion of the statute would be difficult to understand, especially by a layman who is before a court of justice confronted with a charge against him under that statute. This was the situation with which petitioner was faced without the aid of counsel, without being advised of his right to counsel and without having counsel offered to him.

Certainly it would seem to be a more fair procedure for the Judges in State Courts to inform every defendant charged with a crime of his right to be represented by counsel. And in order to afford indigent persons the equal protection of the laws and due process of law, it would also seem proper that counsel be appointed for such indigent persons in felony cases, unless the right to counsel be specifically waived. From prior service on the State Bench, this Court knows that many of the Judges in the Colorado Courts follow such a practice, even though there is no Federal Consti-

tutional mandate that this be done in every case.

■ The Due Process Clause of the Fourteenth Amendment does require, however, that defendants in state non-capital felony cases be represented by counsel when there are special circumstances under which the defendant would not have fair notice and an adequate hearing unless he has the aid of counsel. Bute v. Illinois, supra.

■ When the petitioner in the instant case questioned the fact that his alleged offense amounted to kidnapping, was it not the duty of the trial court at that time to suspend immediately any further proceeding until the defendant was advised of his right to counsel? And, if the defendant desired counsel to assist him in his defense and was not financially able to employ counsel, was it not the further duty of the Court immediately to appoint counsel for him? By reading part of the applicable Colo-

or otherwise, out of this state, any person against his will, or against the will of his parents, spouse, child, guardian or legal custodian of such person, for the purpose of extorting ransom or money or other valuable thing or concession from such person, his parent, spouse, child, guardian or legal custodian, or who secretly seizes, confines or imprisons any person within this state for the purpose of extorting money or ransom or other valuable thing or concession from such person, his parent, spouse, child, guardian or legal custodian; or

"(5) Leads, takes, entices away or detains a child under the age of sixteen years against his will, for any purpose, with intent to keep or conceal it from its parents, guardian or legal custodian."

C.R.S.1953, 40–2–45. *"Penalty for kidnaping.*—Every person found guilty of kidnaping under the provisions of section 40–2–44 shall be deemed guilty of a felony and punishable as follows:

"(1) Where individuals are, or an individual is, subjected to such kidnaping or abduction as defined in subsection (4), and suffers bodily harm inflicted by such kidnaper or abductor, the jury upon conviction of such offender shall in their verdict fix the penalty at death or imprisonment for life, and the court shall thereupon give sentence accordingly; provided, that no person shall suffer the death

penalty who, at the time of the commission of such offense, was under the age of eighteen years; nor shall any person suffer the death penalty who shall have been convicted on circumstantial evidence alone.

"(2) Where the individuals are, or an individual is, subjected to such kidnaping or abduction under subsection (4), and suffers no bodily harm, upon conviction the offender or offenders shall be sentenced to a term in the penitentiary not less than thirty years nor more than life imprisonment.

"(3) Persons found guilty of kidnaping under the provisions of section 40–2–44 shall be sentenced to imprisonment in the penitentiary for not more than thirty years; but when the person found guilty of kidnaping shall be the father, mother, or person standing in loco parentis of or for the person kidnaped, such person shall be guilty only of a misdemeanor, and shall be punished by imprisonment in the county jail for a period of not more than one year.

"(4) Any receiver of ransom money, or any one in whose possession such ransom money is found, who has a felonious knowledge of its source shall, upon conviction, be punished by imprisonment in the penitentiary for not less than five years nor more than twenty years."

rado Statute to a defendant who had been arrested within less than thirty-six hours before arraignment and who apparently had not been notified of the charge of kidnapping until the Information was read to him at the time of arraignment, the trial court may have implied that the facts of the alleged offense constituted kidnapping. The Court, even though it may not have been aware of all the facts, by this conduct prejudiced the rights of the petitioner. Even assuming that petitioner had not expected to be charged with assault and battery and attempted car theft, as he claims, he certainly did not expect to be charged with kidnapping. And, under all the circumstances, when petitioner was informed of the charge of kidnapping there was bound to be some element of surprise. Compound this with the fact that, after petitioner expressed doubt that he was guilty, the trial court read the statute and there can be no other conclusion but that petitioner was in such a state of confusion that he could not have possibly understood the complicated charge nor intelligently plead to the charge without the aid of counsel.

This conduct on the part of the trial court, even though inadvertent, caused the case to lack fundamental fairness and thereby violated due process. See Gibbs v. Burke, 1949, 337 U.S. 773, 69 S.Ct. 1247, 93 L.Ed. 1686; Townsend v. Burke, 1948, 334 U.S. 736, 68 S.Ct. 1252, 92 L. Ed. 1690; De Meerleer v. Michigan, 1947, 329 U.S. 663, 67 S.Ct. 596, 91 L. Ed. 584; Smith v. O'Grady, 1941, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859.

"* * * the fair conduct of a trial depends largely on the wisdom and understanding of the trial judge. He knows the essentials of a fair trial. The primary duty falls on him to determine the accused's need of counsel at arraignment and during trial. He may guide a defendant without a lawyer past the errors that make trials unfair. Cf. Uveges v. Pennsylvania, supra. Failure to protect properly the rights of one accused of serious offenses is unusual. Obviously a fair trial test necessitates an appraisal before and during the trial of the facts of each case to determine whether the need for counsel is so great that the deprivation of the right to counsel works a fundamental unfairness." Gibbs v. Burke, 1949, 337 U.S. 773, 781, 69 S.Ct. 1247, 1251.

In Cash v. Culver, 79 S.Ct. 432, 436, the Supreme Court approved the following quotation from Uveges v. Pennsylvania, 1948, 335 U.S. 437, 441, 69 S.Ct. 184:

"Where the gravity of the crime and other factors—such as the age and education of the defendant, the conduct of the court or the prosecuting officials, and the complicated nature of the offense charged * * * render criminal proceedings without counsel so apt to result in injustice as to be fundamentally unfair, * * * the accused must have legal assistance under the [Fourteenth] Amendment whether he pleads guilty or elects to stand trial, whether he requests counsel or not."

Under all of the circumstances in the case at bar, it was the trial court's duty under the Fourteenth Amendment to advise petitioner, at the time petitioner expressed doubt as to his guilt, as charged in the Information, of his right to counsel. See Gibbs v. Burke, 1949, 337 U.S. 773, 69 S.Ct. 1247; Uveges v. Pennsylvania, 1948, 335 U.S. 437, 69 S.Ct. 184. And due to the trial court's failure to so advise petitioner, this Court concludes that there was a denial of due process of law and that petitioner's detention under his conviction of kidnapping is unlawful.

Inasmuch as the petitioner may be retained in custody by respondent by virtue of petitioner's conviction in the District Court of Fremont County, Colorado, in 1954 on a charge of assault to murder, there remains the question of the disposition to be made of the instant case.

In determining that petitioner was denied due process in connection with the kidnapping charges preferred against

him in Pueblo County District Court, it is not the intention of this Court in any way to adjudge or determine the custodial rights of the respondent over petitioner in connection with his conviction in the subsequent case.

Under the provisions of 28 U.S.C.A. § 2243 this Court has power in this habeas corpus proceeding to "dispose of the matter as law and justice require". To that end, it is the ruling of this Court that the respondent be given ninety days in which to exercise any legal and proper rights that he or any other authorized official of the State of Colorado may have in connection with petitioner's conviction in the District Court of Fremont County, Colorado, on the charge of assault to murder and to retain custody of said petitioner thereunder in conformance with the laws of the State of Colorado. During said ninety day period, respondent may retain custody of petitioner. Should the respondent or other authorized official of the State of Colorado fail or refuse to exercise the above rights within that period, the petitioner will be discharged and released from custody.

It is so ordered.